In re Edna **PHELPS**, Debtor.

**Bankruptcy No. 89 B 14368.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 13, 1993.

Jack McCullough, Chicago, IL, Trustee.

Lorraine M. Greenberg & Assoc., Chicago, IL, for debtor.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the motion of the Chapter 13 Trustee, Jack McCullough, to modify the confirmed Chapter 13 plan of the Debtor, Edna Phelps, to increase the percentage that unsecured creditors will receive under the confirmed plan. For the reasons discussed below, the court denies the Trustee's motion.

## FACTS

On August 29, 1989, the Debtor, Edna Phelps, filed a petition under Chapter 13 of the Bankruptcy Code. On October 26, 1989, this court confirmed the Debtor's Chapter 13 plan. The plan provided that the Debtor's unsecured creditors were to be paid a 10% dividend.[1] The plan provided that the Debtor would make monthly payments of $282 for 43 months. That amount was sufficient to pay each of the unsecured creditors scheduled by the Debtor a dividend of 10% of their claims.

The deadline for filing unsecured claims against the Debtor was January 3, 1990. The total amount of unsecured claims timely filed by unsecured creditors was well below the amount of unsecured debt in the Debtor's schedules. As a result, it took only 37 months of $282 monthly payments by the Debtor to the Trustee to pay those unsecured creditors who timely filed proofs of claim their 10% dividend. On November 16, 1992, the Debtor mailed to the Trustee what she thought was the final payment required by her plan. Although the Trustee has received the 37 monthly payments made by the Debtor, the Trustee has not completed the payments to unsecured creditors under the plan. Instead, the Trustee

---

1. The plan provided that the Debtor's secured creditors would be paid in full, and they have been.

filed the instant motion to amend the plan to require the Debtor to continue making $282 monthly payments to the Trustee for six more months, thereby increasing the dividend to unsecured creditors who filed timely proofs of claim from 10% to 51%. The Debtor objects to the Trustee's motion, claiming that she completed her plan when she completed making payments to the Trustee sufficient to afford those of her unsecured creditors who bothered to file timely proofs of claim a 10% dividend, and, therefore, that the Trustee's motion seeking to amend the plan is time-barred by § 1329 of the Bankruptcy Code.[2]

## JURISDICTION AND PROCEDURE

This court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) as a matter arising under § 1329 of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O) as a matter concerning the administration of the estate, relating to confirmation of a plan, and relating to the adjustment of the debtor-creditor relationship. It is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

Under § 1329(a), the Trustee has the right to seek to modify a Chapter 13 plan to increase (or decrease) the amount to be paid to unsecured creditors. However, the Trustee can seek to modify a plan only "after confirmation of the plan but before the completion of payments under such plan." § 1329(a). The Debtor reads § 1329(a) as requiring the Trustee to move to amend the plan before the Debtor has completed all payments she is required to make under her plan. As the Debtor sees it, the Debtor completed all payments under her plan when she paid the Trustee enough money to pay a 10% dividend to those of her unsecured creditors who filed timely claims. Since it is undisputed that she has paid the Trustee that amount, the Debtor argues that the Trustee's motion to amend her plan is time-barred.

Predictably, the Trustee disagrees. The Trustee argues that "completion of payments" under § 1329 means that: (1) all the terms of a plan and the order confirming a Chapter 13 plan, including the number of payments proposed, have been satisfied; and (2) the trustee has distributed all payments made by the debtor (less, of course, the trustee's fees) to those creditors entitled to payments under the plan. Thus, the issue to be resolved in this proceeding is the meaning of the phrase "completion of payments," as used in § 1329.

I. Must all the terms of a Chapter 13 plan, including the number of payments provided for, be satisfied for "completion of payments" to occur?

■ The first question the court must deal with is whether this Debtor had completed the payments to the Trustee required of her under the plan. The Trustee argues that "completion of payments," as used in § 1329, means performance by a

2. Section 1329 provides:
(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments; or
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

debtor of all the terms of a Chapter 13 plan and the order confirming the plan, including making the number of payments provided for in the plan. This court does not agree with the Trustee's argument.

The inclusion in a Chapter 13 plan of both the number of monthly payments and the percentage to be paid to unsecured creditors is not required by the Bankruptcy Code. *See* §§ 1322(a), (c).[3] The problem presented in the instant proceeding is what happens where the percentage and duration of payments set out in the order confirming the plan are inconsistent, because the amount due unsecured creditors actually filing timely proofs of claims is less than the total unsecured debt scheduled by the debtor. The real question is whether the debtor or the unsecured creditors get the windfall from the discrepancy between scheduled unsecured debts and unsecured claims timely filed. Does the debtor get the windfall, by paying the unsecured creditors with timely filed unsecured claims only the percentage dividend stated in the order of confirmation (and simply reducing the payments and/or making the payments over a shorter period), or do the creditors get the windfall, by requiring the debtor to pay for the full period of time found in the confirmation, thus raising the percentage that unsecured creditors with allowed claims will get above that provided for in the debtor's confirmed plan?

The Bankruptcy Code offers no clue as to how this question should be resolved. However, in *In re Chancellor*, 78 B.R. 529, 530 (Bankr.N.D.Ill.1987), Chief Judge Schwartz of this court gave the debtor the windfall, holding that "completion of pay-ments" occurs when the debtor has paid the percentage owed to each class of creditors as provided for in the plan.

This court agrees completely with the result reached in *Chancellor*. The substance of a plan looks to the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed. *See Chancellor*, 78 B.R. at 530. A simple example makes this conclusion clear.

Assume that the Debtor proposed to pay unsecured creditors 100% in 43 months, but due to the failure of some scheduled creditors to timely file proofs of claim, she is able to provide the Trustee with enough money to pay 100% to unsecured creditors with allowable claims in 37 months. It is inconceivable that the Debtor could be made to continue payments for six more months to pay unsecured creditors more than 100% of their claims.

On the other hand, suppose the Debtor gets a 100% 43 month plan confirmed, but allowed unsecured creditor claims exceed the amount of unsecured debt scheduled by the Debtor. Suppose further that the Debtor pays the Trustee the payments required by the order of confirmation religiously for 43 months, but due to the higher than expected amount of allowed unsecured claims, those payments are only enough to afford unsecured creditors an 85% dividend. Clearly, the Debtor has not completed her payments under the plan.

 The conclusion these examples lead to is that the duration of the plan can be changed, either formally by plan amendment or informally by completing pay-

---

**3.** There is no reason why a debtor could not propose and get confirmed a so-called "pot plan" providing that the debtor will pay all disposable income to the trustee either until those unsecured creditors who file timely proofs of claim are paid in full or for three years, whichever occurs first. It is clear that a *debtor* who does propose to make disposable income available to creditors for three years or more need not specify what percentage creditors will receive so long as creditors are assured that they will be paid at least as much in present value terms as in a Chapter 7 case involving the debtor. §§ 1325(a)(4), (b).

Alternatively, the debtor could get confirmed a plan which provided that the debtor will pay disposable income over to the trustee for a long enough period of time to pay a certain percent of the claims of unsecured creditors who file timely proofs of claims (subject to the caveat that if the period of time is less than three years, the plan payments must be sufficient to pay allowed unsecured claims in full). *See* 1325(b).

Thus, a Chapter 13 debtor must specify in her plan either the length of payments or the percentage to be paid unsecured creditors who file timely proofs of claims. However, a Chapter 13 debtor need not specify both. In this district, however, for reasons unknown to the court, the custom is to specify both duration of payments by the debtor and the percentage to be paid unsecured creditors with allowed claims.

ments sufficient to pay the required percentage early because of a reduction in the allowed unsecured claims as compared with scheduled debt. On the other hand, the percentage to be paid allowed unsecured claims, once fixed by the order confirming the Chapter 13 plan, can only be changed by plan amendment. *See* §§ 1329(a)(1)–(2).

In this case, the Debtor's plan promised the unsecured creditors a 10% dividend. Because fewer unsecured claims were filed than anticipated, the Debtor was able to pay the Trustee enough money to pay her unsecured creditors a 10% dividend in only 37 monthly payments. The fact that the plan called for 43 monthly payments is irrelevant. The Debtor has made all payments required of her by her Chapter 13 plan to the Trustee.

II. Assuming a debtor has made all payments required under the plan to the trustee, must the trustee have forwarded all payments made by the debtor to the appropriate creditors for "completion of payments" to occur?

■ The next question is whether "completion of payments," as that phrase is used in § 1329(a), means: (1) completion of payments by the debtor to the trustee only, so that the Trustee in this case is time barred from seeking to obtain court approval of an amendment to the Debtor's plan; or (2) completion of payments both by the debtor to the trustee and by the trustee to the creditors, so that the Trustee in this case may seek to amend the Debtor's plan.[4]

In *In re Powers*, 140 B.R. 476, 479 (Bankr.N.D.Ill.1992) (Ginsberg, J.), this court adopted a plain meaning approach in analyzing § 1329. In *Powers*, this court held that requiring the trustee to prove a change in circumstances as a prerequisite to the grant of a motion to amend a debtor's confirmed Chapter 13 plan is inappropriate, because, by its terms, the statute

does not require such a test. *Id.* This court gave great weight to the fact that Congress specifically provided for a change in circumstances test under other provisions of the Bankruptcy Code, including at least one in Chapter 13. *Id.* at 479, n. 2. *See, e.g.,* § 1328(b). Therefore, the absence of such a provision in § 1329 was significant.

Ordinarily, the court would employ a similar approach in interpreting § 1329 in this proceeding. Such an approach would lead to the conclusion that § 1329 allows modification of a debtor's plan at any point before the trustee has forwarded all payments to the appropriate creditors. That is true because Congress specifically provided in § 1328(a) that discharge of the debtor is appropriate "[a]s soon as practicable after completion by the *debtor* of all payments under the plan." § 1328(a) (emphasis added). However, in § 1329, the very next section, Congress provided that modification of a Chapter 13 plan is permissible at any time before "completion of payments under the plan." § 1329(a). The difference between the language of § 1328(a) and § 1329(a) would lead the court to conclude that the fact that Congress failed to insert the words "by the debtor" in § 1329 is dispositive, because, if Congress had wanted to prevent modification after a debtor had made all payments to the trustee, it would have used the phrase "completion by the debtor of all payments under the plan" in § 1329(a), exactly as it had done in § 1328.[5]

Despite the logic inherent in such an approach, the court cannot conclude that Congress intended the phrase "completion of payments" in § 1329(a) to refer to the completion of payments by the trustee to creditors in addition to the completion of payments by the debtor to the trustee, because to so interpret § 1329(a) could lead to an absurd result when § 1329(a) is read in conjunction with § 1328(a). Section 1328(a) provides that a Chapter 13 debtor is

---

4. While this court ruled earlier in this opinion that the Debtor has completed her plan payments to the Trustee, it is undisputed that the Trustee has not completed his plan payments to the Debtor's creditors.

5. There can be no doubt that Congress, in enacting Chapter 13, distinguished between payments by the debtor to the trustee and payments by the trustee to creditors. *See, e.g.,* §§ 1322(a), 1326(a), 1326(c).

given a discharge "[a]s soon as practicable upon completion of payments by the debtor under the plan." § 1328(a). If "completion of payments" in § 1329 means both completion of payments by the debtor to the trustee and by the trustee to the creditors under the plan, the trustee would have the right to seek to amend the plan to increase the amount the debtor's unsecured creditors with allowed claims would receive *after the debtor had received a discharge.* Thus, in theory, the debtor could be compelled to pay discharged debts under a modified plan.[6] Congress could never have intended such an absurd result. *Cf. In re Tek Aids Industries,* 145 B.R. 253, 257 n. 3 (Bankr.N.D.Ill.1992) (Ginsberg, J.).

Thus, the court holds that "completion of payments," as that phrase is used in § 1329(a), means completion of payments by the debtor to the trustee.[7] *See In re Moss,* 91 B.R. 563, 565 (Bankr.C.D.Cal. 1988). The Trustee is time barred from amending the Debtor's plan.

## CONCLUSION

For the foregoing reasons, the Trustee's motion is denied.

---

**6.** However, how that compulsion would work is unclear. It is doubtful that the debtor's discharge could be revoked. *See* 1328(e). It is equally doubtful that the discharge could somehow be erased by either dismissal or conversion of the case to Chapter 7. *See* §§ 348–349. Perhaps the court could compel the debtor to pay the additional amounts required by the amended plan after discharge by using a garnishment order against the debtor or by using civil contempt. *See* §§ 105, 1325(c); Fed.R.Bankr.P. 9020. *See also In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (bankruptcy courts have civil contempt powers); *In re Schatz,* 122 B.R. 327, 328 (N.D.Ill.1990) (same); *In re Prairie Trunk Ry.,* 125 B.R. 217, 222 (Bankr.N.D.Ill.1991) (same). *But see In re Sequoia Auto Brokers, Ltd., Inc.,* 827 F.2d 1281, 1290 (9th Cir.1987) (bankruptcy courts do not have civil contempt powers). Of course, a debtor might be able to take the discharge and run by exercising the debtor's absolute right to dismiss the Chapter 13 case. *See* § 1307(b).

**7.** In *In re Powers,* 140 B.R. 476, 481 (Bankr. N.D.Ill.1992) (Ginsberg, J.), the court hinted at the opposite result when it focused on payments by the trustee while going through a boilerplate analysis of the requirements for the approval of a motion to amend a debtor's plan under § 1329. However, the court's statement in *Powers* was based on the extraordinary fact situation in that case. In *Powers,* the payments made by the debtor to the trustee that purported to complete the payments the debtor was to make under the plan were made pursuant to an order that had been found to be void on due process grounds in the same proceeding. *Powers,* 140 B.R. at 480. Obviously, payments made by a debtor under a void order have no legal effect. Since her payments had no legal significance, the debtor in *Powers* could not have completed her plan payments. The debtor could only complete her payments when the court allowed the trustee to amend the plan and ratified the debtor's prior payments to the trustee. Because the debtor had not herself completed her payments to the trustee *before* the trustee amended the plan, the trustee was entitled to amend the plan.