**In re Dean A. CASPER and Marlene Casper, Debtors.**

**Bankruptcy No. 89 B 21395.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 25, 1993.

David E. Cohen, Cohen & Krol, Chicago, IL, for debtor.

Monette Cope, Office of Jack McCullough, Chicago, IL, Standing Trustee.

## MEMORANDUM DECISION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on the Debtors' motion requesting additional findings of fact and conclusions of law regarding the Court's prior decision granting the Trustee's motion to modify the Debtors' plan. This decision shall constitute the requested clarification of the record for purposes of appeal.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

## BACKGROUND

The facts of this case are detailed in the Court's prior decision. *See In re Casper*, 89 B 21395 (Bankr.N.D.Ill. August 7, 1992). For the purposes of this decision, the Court will only highlight the facts relevant for disposition of the present matter.

The Debtors' scheduled secured debt at $83,003.55, priority tax debt at approximately $27,000 and unsecured debt at $29,-837.91. Their initial plan provided for 100% payment of secured debt outside of the plan and 10% of unsecured debt through the plan over a period of 48 months. At the Debtors' request, the term was extended to 60 months and the priority tax debt was to be paid through the plan. Pursuant to the confirmation order, therefore, the Debtors were to make 60 monthly payments of $550 over the life of the plan.[1]

The time for filing claims expired on May 14, 1990, approximately two months after confirmation. Because various claims were inaccurately scheduled[2] and untimely filed, the amount due unsecured creditors decreased significantly. Less than two years after confirmation, the Debtors had paid the Trustee enough to approximate a 10% payout to the allowed unsecured claims under the plan. That amount, however, totalled far less than the agreed payments of $550 to be paid over the 60 month period.

Prior to distributing all of the payments received, the Trustee brought a motion to modify the plan to increase the payout to unsecured creditors. The Trustee requested the Debtors continue to make their $550 monthly payments for the life of the plan which would result in an 80% payout to unsecured creditors. In its decision dated August 7, 1992, the Court granted the Trustee's request, and stated the following:

> The Court will not allow the Debtors to receive a windfall due to an unanticipated change in the Debtors' ability to pay their creditors. Therefore, the Trustee's proposed modification to increase the payment of allowed unsecured creditors to 80% of their claims is granted.

*In re Casper*, 89 B 21395, slip op. at 4 (Bankr.N.D.Ill. August 7, 1992).

## DISCUSSION

Under Section 1329, the Trustee may seek to modify a Chapter 13 plan to increase (or reduce) the amount to be paid to unsecured creditors. 11 U.S.C. § 1329(a). Any such request can occur at "any time *after* confirmation of the plan but *before* the completion of payments under such plan." *Id.* (emphasis added). This Court

---

1. The original plan was confirmed as modified in the confirmation order. Those modifications extended the period of the plan from 48 months to 60 months and increased the monthly payment to the Trustee from $530 to $550. For the sake of clarity, therefore, any reference to the plan includes the confirmation order recognizing the above-identified amendments.

2. Apparently, the Debtors had inaccurately scheduled their $27,000 priority tax debt which was to be paid at 100% through the plan. That debt was subsequently reduced to approximately $12,000.

addressed this timing issue in its prior decision. The beginning date is easy to define: the date of confirmation. It is the latter date which causes problems: the time when payments are completed. This Court found payments were completed when the essential terms of the plan had been satisfied *and* when the Trustee had completed distributing all plan payments.

■ The Debtors have filed the instant motion pursuant to Federal Rule of Bankruptcy Procedure 7052(b) [3] for purposes of clarifying the record for appeal. The Debtors request this Court to provide additional findings of fact and conclusions of law. The Debtors raise several areas purportedly in need of clarification. Motions made pursuant to Federal Rule of Civil Procedure 52(b) are not intended to introduce new theories nor intended to relitigate old matters. *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill.1976). In their present motion, the Debtors introduce new theories and attempt to relitigate several other matters.

### *Modification of the Plan*

The Debtors read Section 1329(a) as requiring any request to amend the plan to occur *before a debtor* has completed all payments required under the plan. According to the Debtors, all payments have been completed when they have paid enough to the Trustee to satisfy the percentage payout to creditors timely filing claims. The Trustee on the other hand construes that same section as allowing a request to amend to occur anytime *before* the essential terms of the plan have been satisfied and *before* a trustee has made the last distribution under the plan. The

Trustee focuses not on the percentage of debt satisfied but rather upon the number and amount of payments required under the plan.

The timing problem raised by the parties is only the tip of the iceberg. Submerged is the interesting issue of how to allocate an unintended "windfall." As the plan demonstrates, the Debtors agreed to pay 10% of the $29,837.91 scheduled unsecured debt which was eventually reduced to $18,956.13. Which party is entitled to the windfall? Are the Debtors entitled to the windfall by virtue of their paying only 10% of $18,956.13 or are the creditors entitled to the windfall by virtue of their receiving a pro rata distribution of the 10% payment of $29,837.91? Had the Debtors confirmed a so-called "pot plan," the issue of who receives this windfall would be non-existent. In such plans, a "pot" of money is available for distribution to general unsecured creditors.[4] Those claims allowed share the "pot" pro rata. *See In re Moseley*, 74 B.R. 791, 794 n. 9 (Bankr.C.D.Cal.1987). These types of plans preclude a debtor from taking advantage of the large reduction of claims that occurred in this case.

The plan in this case closely resembles that of a confirmed "pot plan" because it expressly provided that the Debtors pay a sum certain ($550/mo.) over 60 months. The plan, however, qualifies the distribution among creditors: 100% to secured creditors outside the plan and 10% to unsecured creditors through the plan. What happens if a debtor pays to the trustee an amount equal to the percentage payout in only 24 months of a 60 month plan? These Debtors would have the Court believe that

---

**3.** Federal Rule of Bankruptcy Procedure 7052 incorporates Federal Rule of Civil Procedure 52 which provides in pertinent part:

Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in

the district an objection to such findings or has made a motion to amend them or a motion for judgment.
Fed.R.Civ.P. 52(b).

**4.** A "pot plan" is not confirmed with a large sum of money set aside for the sole use of the general unsecured creditors. Rather, it is a sum certain to be distributed by virtue of a debtor's agreement to pay monthly stipends over a fixed period of time. The percentage allocation is not determined until all allowed claims have been determined.

they have satisfied the terms of the plan. This Court disagreed for the following reasons.

*Completion of payments*

■ Chapter 13 is not a form of involuntary servitude or feudal serfdom but rather a purely voluntary chapter for those debtors who desire to pay their creditors. Chapter 13 is intended to facilitate such repayment through the use of plans which terms bind the debtor and creditors. *See* 11 U.S.C. § 1327(a). Those terms can be modified at any time "before the completion of payments under such plan." 11 U.S.C. § 1329(a). A literal reading of the statute indicates that a Trustee may bring his/her request to modify the plan at any time before a debtor has made *all* plan payments. Nothing in the statute alludes to either the percentage of debt paid or to even the terms of the plan. This literal construction is buttressed by the plain language of Section 1328 which provides:

> As soon as practicable after completion by the debtor of *all* payments under the plan, ... the court shall grant the debtor a discharge ...

11 U.S.C. § 1328(a) (emphasis added). Again, the literal language unequivocally requires the debtor to complete *all* payments before receiving a discharge, not satisfy a percentage of scheduled debt. This language appears to provide the genesis for the implementation of "pot plans" because those plans require a debtor to pay a sum certain, not satisfy a certain percentage of debt.

The plain language aside, the real impetus for requiring the debtor to complete *all* payments versus a percentage of the sched-

uled debt is to ensure that a debtor complies with the essential terms of a confirmed plan. Section 1325(b) [5] permits a bankruptcy court to confirm a plan over objections as long as that plan commits all of the debtors' projected disposable income to making plan payments for a three year period. A majority of plans are confirmed pursuant to this section. If the amount of debt paid through the plan decreases without a corresponding increase in the amount of payments or period over which payments are to be made then the debtor has not really devoted all of his/her disposable income to the completion of the plan. Thus, the percentage of debt paid has no impact on the construction of a confirmed plan because it is the number of payments (amount of disposable income) allocated over a certain period of time that controls. It makes no sense that a debtor would be entitled to a discharge or the trustee precluded from modifying the plan simply because a superfluous condition has been satisfied.

Additionally, construing the completion of a plan as occurring when the debtor has satisfied a certain percentage of scheduled debt would provide a catalyst for a debtor to submit inaccurate schedules.[6] For example, a debtor would have an incentive to submit a percentage plan utilizing all disposable income computed on an inflated amount of scheduled unsecured debt. Once those inaccurately scheduled debts have been removed and the amount of debt reduced (as in this case), the debtor would end up paying only a portion of the agreed upon percentage, an amount well-below

---

**5.** Section 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1).

**6.** The success or failure of a Chapter 13 case may depend upon the discipline of a debtor. Consequently, a debtor must make payments under a proposed plan prior to its confirmation to show the viability of his/her proposal. 11 U.S.C. § 1326(a). The plan is usually confirmed in short order to facilitate its implementation and eventual completion. Often times, therefore, the time for filing claims expires after confirmation. As a result, the actual amount of debt to be paid is usually unknown at the time of confirmation.

that agreed to be paid pursuant to 11 U.S.C. § 1325(b)(1)(B).

Based on the foregoing, this Court finds that the Debtors are bound by the express provisions of the plan. In this case, the Debtors paid to the Trustee 10% of the allowed unsecured debt but they committed only a portion of their disposable income which under their plan amounts to $550 a month for 60 months. At twenty-four months, the Debtors have yet to commit all of their disposable income as required by the express terms of their plan.

*Trustee distribution*

Assuming the Debtors were to complete all the required plan payments, the next issue this Court must decide is when would that completion occur. Would "completion of payments" occur upon the Trustee's receipt of the Debtors' last plan payment or would it occur upon the Trustee's disbursement of all such payments received? This Court previously found that completion of payments occurs under Section 1329 when the Trustee has completed distributing payments under the plan.

There is little doubt that Congress, in enacting Chapter 13, distinguished between payments by the debtor to the trustee and payments by the trustee to the creditors. *See, also,* 11 U.S.C. §§ 1322(a)(1), 1326(a), 1326(c) and 1328(a). Section 1329, however, provides that the trustee can modify the terms of the plan at any time "before the completion of payments under such plan." 11 U.S.C. § 1329(a). The plain language fails to identify who is completing the payments under the plan, unlike Section 1328(a) which expressly states that a court may grant a discharge after "completion by the *debtor* of all payments" under the plan. 11 U.S.C. § 1328(a) (emphasis added).

The case law construing the phrase "completion of payments" as used Section 1329 has recognized that such completion occurs when the trustee has made distributions to the creditors. In the case of *In re Chancellor,* 78 B.R. 529 (Bankr.N.D.Ill.

1987), the court analyzed the plain language of Section 1329 and held that "completion of payments" occurs when the obligations are completed to each class of creditors. 78 B.R. at 530. Similarly, the *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill.1992) court adopted a plain language approach in analyzing Section 1329. The *Powers* court held that the plain language did not require the trustee to prove a change in circumstances as a condition precedent to granting a motion to modify a confirmed Chapter 13 plan. *Id.* at 479. Recently, however, the *Phelps* court rebuffed the interpretations of the *Chancellor* and *Powers* courts. *In re Phelps,* 149 B.R. 534 (Bankr. N.D.Ill.1993).

The *Phelps* court explained that if Section 1329 is read to require completion of payments by the trustee to the creditors under the plan, the trustee would have the right to seek to amend the plan "to increase the amount the debtor's unsecured creditors with allowed claims would receive *after the debtor had received a discharge." Id.* at 539 (emphasis in original). The *Phelps* conclusion is accurate, however, if one treats the percentage payment as the defining element of a confirmed plan because once that amount has been satisfied then the debtor has completed all payments under the plan. Upon completion, the debtor could receive a discharge and any subsequent increase to that percentage allocation would create the anomalous result hypothesized by the *Phelps* court. If, however, one were to interpret the number of payments and term of plan as the necessary elements to confirming a plan (as this Court does) then any subsequent modification to the percentage distribution to the creditors would not create the unusual result postulated by the *Phelps* court.[7] Consequently, this Court's treatment of the percentage allocation as a superfluous condition underscores this Court's interpretation of Section 1329.

■ The case law aside, the inherent logic underlying modification of the plan indi-

---

7. The *Phelps* court recognized that it would be difficult to fathom how the court could require the debtor be compelled to pay discharged debts

under a modified plan. *Phelps,* 149 B.R. at 539 n. 6.

cates that payments are not completed until the trustee has distributed all such payments to the creditors. Section 1306 defines property of the estate as including all property as defined under Section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted. 11 U.S.C. § 1306(a). Consequently, the Chapter 13 estate includes gifts, inheritances, and windfalls that come to the debtor after the petition. *See, e.g., In re Euerle,* 70 B.R. 72 (Bankr.D.N.H.1987) (property of the estate includes $300,000 inheritance received by the debtor after confirmation); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (property of the estate includes $1.3 million won in lottery after confirmation). Obviously, if a debtor were to win the lottery it is more likely than not that the trustee would move to modify the plan because of the change in circumstances. Allowing the debtor to cut-off the trustee's right because the debtor hand-delivers a payoff check to the trustee minutes before the trustee files a motion to modify the plan would defeat the very purpose of allowing such modifications to occur.

Although the Debtors in this case did not win the lottery, they did gain an unintended windfall when the amount of scheduled debt was reduced by over $10,000. This change in circumstances is significant and any attendant request to modify the plan to account for this change should not be disallowed simply because the Debtors mailed a payoff check in the 24th month of a 60 month plan. Until the Trustee distributes this payment, the payments have not been completed, and to hold otherwise would invite an absurd reading of the statute.

### Due Process

The Debtors also contend that this Court denied them due process. They argue that the Court limited the hearing to the sole issue of whether the phrase "completion of payments" as used in Section 1329(a) precluded the Trustee from modifying the plan once the Debtors had paid all sums over to the Trustee. According to the Debtors, therefore, the Court could not entertain any additional arguments unless the Debtors were given a chance to respond in written form. The Court held that the Debtor's plan could be modified, which according to the Debtors exceeded the simple issue of construing the meaning of "completion of payments." The Debtors contend, therefore, the Court modified the Debtors' plan without considering their position. There is simply no support for the Debtors' contention.

The Trustee's motion was fully briefed and set for hearing on the issue of modification, which included construing the phrase "completion of payments" as used in Section 1329. Neither the Court nor the Trustee agreed to limit the hearing to the sole issue of when a debtor has completed plan payments. Further, the record reflects that the Debtors had no intention of limiting the hearing to the construction of that particular phrase. For example, the Debtors expressly challenged any modification based upon two new legal theories introduced for the first time at the hearing: the doctrine of estoppel and Section 1329(c)'s term limitation. (Transcript, pp. 6 & 11). Consequently, the record clearly reflects that neither the Court, the Trustee nor the Debtors expressly agreed to limit the hearing to construing the phrase "completion of payments" as used in Section 1329. The Debtors knew modification of the plan was at issue and expressly argued against any such modification. The Debtors' contention that this Court denied them due process is unsupported and without merit.

### Equitable Estoppel

The Debtors request that the Court clarify the reasons why the Trustee was not equitably estopped from bringing his motion to modify the plan. This argument raised for the first time at the hearing was neither explained nor supported.

An "estoppel arises when one party has made a *misleading* representation to another party and the other has reasonably relied to his detriment on that representation." *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). The purpose of estoppel is to prevent a party from benefitting from its own mis-

representations. *TIC Inv.*, 900 F.2d at 115 ("The reasons for the general application of estoppel are simple enough—the doctrine prevents a party from benefitting from its own misrepresentations.").

■ Although far from clear, it appears the Debtors are contending that the Trustee's report misled the Debtors. Construing the Debtors' argument for them, the Debtors would contend that they would not have paid the amount listed had they known said payment would subject them to a modification of the plan to pay more. The record is devoid of any evidence to support a finding that the Trustee made a misleading representation. The report was a true and accurate portrayal of the amount necessary to payoff the Debtors' then existing plan. There is nothing to support a finding that the Trustee issued the report with the particular payout number to induce the Debtors to pay off that amount so the Trustee could then move to modify the plan.

The Debtors have also failed to support the elements of reasonable reliance and the detriment springing from such reliance. Like much of the Debtors' argument, the issue of reasonable reliance is left to the Court's imagination. The issue of detriment, or lack thereof, underscores the weakness of the Debtors' relying on the doctrine of estoppel. Requiring the Debtors to satisfy 80% of their unsecured debt by committing all of their disposable income over 60 months fails to establish how the Debtors have been harmed. In sum, the record fails completely to justify the application of equitable estoppel.

### Change in Circumstances

The Debtors wish the Court to clarify the exact change in circumstances allowing the Trustee to modify the existing plan. As explained, the Debtors agreed to commit all of their disposable income to completing their plan which amounted to $550 a month for 60 months. Through inaccurately scheduled debts and untimely filed claims, the amount of debt proposed to be paid through the plan decreased significantly. It is this unintended decrease or "change in circumstances" which prompted the Trustee to modify the plan to require the Debtors to continue to devote all of their disposable income even though the payout to the unsecured creditors would increase from 10% to 80%.

### Cause

■ Finally, the Debtors request the Court to clarify the "cause" under Section 1329(c) [8] which allowed the Trustee to modify the plan. That particular subsection did not play into the analysis of whether the plan should be modified. As the prior decision acknowledged, Section 1329(c) provides that a debtor cannot make payments under a modified plan for a period longer than three years after the time that the first payment under the originally confirmed plan was due, unless "cause" is shown. *In re Casper*, 89 B 21395, slip op. at 3, n. 2 (Bankr.N.D.Ill. August 7, 1992) (quoting 11 U.S.C. § 1329(c)). In the present case, the five year extension was granted at the request of the Debtors to confirm the original plan. Unhappy with the recent turn of events, the Debtors now challenge the term because the plan has been modified. The modifications, however, had nothing to do with extending the term of the plan, but rather with requiring the Debtors to comply with the terms of a confirmed plan. The Debtors are in no position to argue that the original term nullifies the Trustee's request.

### CONCLUSION

This decision shall constitute this Court's additional findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052(b).

### ORDER

For the reasons set forth in the Memorandum Decision dated February 25, 1993,

---

**8.** Section 1329(c) provides:

A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c).

**IT IS HEREBY ORDERED THAT** the Debtors' motion for additional findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052(b) is granted.