In re Lana G. McKINNEY, Debtor.

Bankruptcy No. 393–31451psh13.

United States Bankruptcy Court,
D. Oregon.

Feb. 2, 1996.

Alan R. Unkeless, Aloha, OR, for debtor.

MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter came before the court on the trustee's motion to modify the debtor's Chap-

ter 13 plan. Upon review it is clear that the trustee seeks two court rulings. First, he asks the court to interpret the current confirmed plan. Second, if he prevails on the issue of interpretation he asks the court to modify that plan to increase the stated percentage to unsecured creditors.

The plan was confirmed on February 13, 1994. The debtor has no secured debt and the plan provided for 0% distribution to general unsecured creditors. Thus only priority debt was to be paid through the plan at $125 per month for twelve months and $230 per month for an unspecified time thereafter. The debtor scheduled priority debt of $10,-000. Under the proposed payment schedule the debtor needed over 36 months to pay this amount. The actual priority claims filed and allowed totalled substantially less than $10,-000. Consequently, it took the debtor only 12 months to pay the allowed priority claims in full.

■ The trustee asks the court to interpret the confirmed plan as having a term of 3 years. He contends that, despite the fact that the plan did not specify its term, the parties understood that it would run for at least three years. Paragraph 2(c) of the plan requires all priority debt to be paid in full; under the facts as known at confirmation the proposed plan payments would not have paid the priority debt in full, as scheduled, in less than three years. He further argues that the local practice at the time this plan was confirmed was not to specify the number of payments required under a plan if it appeared that the plan, as here, would require longer than 3 years to complete. Finally, he contends that the plan must have been intended to run for at least three years because a plan of shorter duration would have violated § 1325(b)(1) and could not have been confirmed. Section 1325(b)(1) requires as a condition of confirmation that a proposed plan provide for either full payment of all allowed unsecured debt or for the debtor to apply all of his projected disposable income for a period of at least 3 years toward plan payments.

The court agrees with the trustee. The parties intended that this plan continue for a period of at least 3 years; this requirement was incorporated into the plan by implication. My conclusion is bolstered by the fact that it would have taken more than 3 years for the debtor to pay the scheduled priority debt at the payment rate specified in the plan.

■ Under § 1329(a)(1) a plan may be modified at the request of the trustee to provide for an increase in the amount of payments to classes of creditors provided for by the plan. This request may be made "at any time after confirmation of the plan but before completion of payments under such plan." The debtor argues that since her plan provided for payments only to priority debt and since that debt has been paid in full, the "payments under [the] plan" have been completed and the trustee's motion to modify the plan to increase the percentage to be paid to general unsecured creditors is untimely. Arguing that the plan requires the debtor to make 36 monthly payments the trustee asserts that there has been no "completion. of payments under such plan."

The court has interpreted the plan as one of 3 years' duration. Modification is urged because the terms of the plan, having been structured on inaccurate information regarding the amount of priority debt, are internally inconsistent. Where the terms of a confirmed plan are internally inconsistent, has the debtor "completed payments under the plan" under § 1329(a)(1) when, as she urges, she has paid the general unsecured creditors the amount provided for their class or when, as the trustee insists, payments are made for the complete plan term?

The court addressed a similar issue in *In re Phelps*, 149 B.R. 534 (Bankr.N.D.Ill.1993). In *Phelps* the debtor's confirmed Chapter 13 plan provided for payments of $282 per month for a period of 43 months. General unsecured creditors were to receive 10% of their claims. However, because the amount of the unsecured claims actually filed was less than anticipated, it took the debtors only 37 months to pay sufficient funds to the trustee to pay 10% on the unsecured creditor's claims. Thereafter the trustee moved to modify the debtors' plan to increase the payments to these creditors. The debtors

objected, arguing that the trustee's motion was not timely because they had completed their plan payments. The court agreed, stating:

"The substance of a plan looks to the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed. A simple example makes this conclusion clear.

Assume that the Debtor proposed to pay unsecured creditors 100% in 43 months, but due to the failure of some scheduled creditors to timely file proofs of claim, she is able to provide the Trustee with enough money to pay 100% to unsecured creditors with allowable claims in 37 months. It is inconceivable that the Debtor could be made to continue payments for six more months to pay unsecured creditors more than 100% of their claims."

*Id.* Consequently, it held that " 'completion of payments [under § 1329(a) ]' occurs when the debtor has paid the percentage owed to each class of creditors as provided for in the plan."

In *In re Casper,* 153 B.R. 544 (Bankr. N.D.Ill.1993) *rev.* 154 B.R. 243 (N.D.Ill.1993) the plan called for 60 monthly payments of $550. The debtors would pay secured and priority creditors in full and the general unsecured creditors would receive 10% of their claims. The filed and allowed priority and secured claims were substantially less than scheduled. In addition, approximately two years after the plan was confirmed, the debtors made a lump sum payment to the trustee of several thousand dollars. Consequently, approximately 25 months after beginning payments the debtors had paid the trustee sufficient funds to pay the general unsecured creditors 10%. The trustee moved to modify the plan and the debtors objected to modification because they had completed their plan payments within the meaning of § 1329(a)(1).

The bankruptcy court rejected the debtors' argument that plan payments were completed when all creditors had been paid the amounts provided for in the plan. Rather, it held that payments would not be complete until the debtor had made all 60 payments provided for in the plan. In reaching this conclusion the bankruptcy court noted:

"The real impetus for requiring the debtor to complete all payments versus a percentage of the scheduled debt is to ensure that the debtor complies with the essential terms of a confirmed plan. Section 1325(b) permits a bankruptcy court to confirm a plan over objections as long as that plan commits all of the debtor's projected disposable income to making plan payments for a three year period. A majority of plans are confirmed pursuant to this section. If the amount of the debt paid through the plan decreases without a corresponding increase in the amount of payments or period over which payments are to be made then the debtor has not really devoted all of his/her disposable income to the completion of the plan. Thus the percentage of debt paid has no impact on the construction of the confirmed plan because it is the number of payments (amount of disposable income) allocated over a certain period of time that controls."

On appeal the district court reversed and, citing *Phelps,* held that the trustee's motion was untimely because " 'completion of payments' under 11 U.S.C. § 1329(a) occurs when the debtor pays the trustee the full amount the plan requires the debtor to pay which satisfies the percentage the debtor proposed to pay to a class of creditors."

*In re Rivera,* 177 B.R. 332 (Bankr.C.D.Cal. 1995) also addressed this issue. There the debtors' confirmed plan required 36 monthly payments of $2,300. The plan provided that unsecured creditors would receive 65% of their allowed claims. However the actual allowed claims were substantially higher than the scheduled debt. As a consequence the 36 monthly payments were insufficient to pay the 65% dividend. Alleging a plan default the trustee moved to dismiss. The debtors sought a discharge, arguing that they had completed their obligations under the plan by making 36 monthly payments.

The *Rivera* court, citing *Phelps,* held that the debtors had not completed their plan payments because they had not paid each creditor the amount provided for in the plan. The court noted that "the substance of the

plan looks to the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed." *Id.* at 334. (citations omitted) However, the court noted that it agreed "with the logic of *Phelps [only] so long as its application does not circumvent the 'best efforts' requirement of 11 U.S.C. § 1325(b)."* *Id.* at 335 Fn. 3. (emphasis added).

The *Rivera* court's reasoning points out the flaw in the district court's opinion in *Casper.* Under § 1325(b)(1) a plan cannot be confirmed unless it provides for full payment of all allowed unsecured claims **or** provides that the debtor apply all of his projected disposable income to it for a period of three years.

In *Phelps* the debtors had made 37 monthly plan payments. Consequently, they had met the requirements of § 1325(b)(1) at the time the trustee brought his motion. Therefore in its analysis the court did not focus on the impact of that statute.

■ By contrast the *Casper* debtors had made only 25 monthly payments at the time the trustee brought his motion to modify the plan. Thus, although the debtors had paid the stated percentage under their plan, they had not met the requirements of § 1325(b)(1). The court erred in failing to consider whether the fact that the debtors had paid the amount dictated by their plan relieved them of their obligation to comply with the requirements of § 1325(b)(1). This court believes that it does not. This court holds that where the terms of a confirmed plan reveal themselves to be internally inconsistent the debtors must continue their plan payments, at a minimum, for a time sufficient to meet the requirements of § 1325(b)(1). *See Rivera, supra.* As the debtor's plan payments are not completed, the trustee may file a motion under § 1329(a)(1) to modify the plan to increase the percentage to be paid to the general unsecured creditors.

■ The debtor argues that the trustee's motion should be denied, even if timely, because a plan modified after confirmation need not comply with the disposable income requirements of § 1325(b). That is incorrect.

Section 1329, which governs postconfirmation plan modification, states, in relevant part:

"(b)(1) the requirements of section 1325(a) of this title apply to any modification under this subsection."

Section 1325(a) in turn states, in relevant part:

"(a) *Except as provided in subsection (b),* the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title."

Although this statutory language is not a model of clarity, it generally has been interpreted as incorporating, upon objection, the requirements of § 1325(b). By filing his motion the trustee has clearly stated his position that the provisions of § 1325(b)(1) must apply to the plan.

■ The debtor also argues that the trustee cannot object to the plan at this time because he failed to do so prior to confirmation. This argument mischaracterizes the trustee's motion. The trustee is not objecting to the debtor's confirmed plan. He is asking that it be interpreted and modified. This court has ruled that under the facts of this case he may do so. The trustee's motion will be granted.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Fed.R.Bankr.P. 7052, and they will not be separately stated.