**In re Boon SOUNAKHENE, Thene Sounakhene, Debtors.**

**No. 98–15283–A13.**

United States Bankruptcy Court, S.D. California.

June 13, 2000.

As Amended June 26, 2000.

Thomas K. Atwood, La Mesa, CA, for Debtors.

Michael Koch, for Thomas H. Billingslea, Jr., Trustee, San Diego, CA, for Chapter 13 Trustee.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

### I.

### INTRODUCTION

The Trustee moved to modify the chapter 13 plan of debtors, Boon and Thene Sounakhene ("Debtors"), to increase the distribution to general unsecured creditors from 12% to 45%. The basis for the modification is the debtors' alleged failure to comply with the disposable income test of Section 1325(b)(1)(B). Specifically, the Trustee contends the Debtors failed to apply all their disposable income for a period of not less than three years because they made a lump sum prepayment before 36 months had elapsed. The Trustee contends the Debtors must make the plan payments for *the full 36 months* notwithstanding their lump sum prepayment.

The Debtors object to the modification. They contend modification is time-barred because they completed the plan before the motion was filed. Alternatively, modification is not merited because the Debtors have paid a sum equal to their projected disposable income over 36 months which is all the disposable income test requires. They should not be penalized for refinancing their home to prepay the plan. Even if the Debtors were required to continue the payments, their amended Schedules "I" and "J" show they have no disposable income due to their increased expenses. Having had the opportunity to review the

case law and having duly considered the arguments made in the pleadings, the Court sustains the objection.

## II.

## FACTUAL BACKGROUND

The Debtors filed their chapter 13 petition on November 10, 1998. Their confirmed plan requires the Debtors to make monthly payments of $876 for approximately 37 months. It pays their mortgage arrears of approximately $6,000, pays for a vehicle and pays a 12% dividend to general unsecured creditors.

The Debtors utilized the "Chapter 13 (Mandated Form)"; although the form is not, in fact, mandated by the judges of this District. Paragraph 16 of the plan provides:

> General Provisions..... Notwithstanding section 1329(b), Trustee may bring a motion at any time within the first 36 months of the Plan to modify debtors' Plan to meet the criteria of 1325(b)[the disposable income test].

The Debtors signed the form plan and made no changes to the pre-printed language.

The Debtors made the plan payments for one year. Thereafter, in early 2000, the Debtors refinanced their home and paid the Trustee a lump sum of $17,192.92 to prepay their plan.[1] Additionally, $6,000 was paid directly from escrow to cure the mortgage arrears. They believed the lump sum payment fully satisfied their obligations under the plan and the case would be closed.[2]

The Trustee paid off all the creditors and still retains undistributed funds of $6,000. He then filed this motion to modify the plan. The modified plan continues the $876 monthly payments for a plan length of 36 months to provide an increased dividend of 45% to general unsecured creditors.

The Debtors' amended Schedules "I" and "J" filed May 4, 2000 show they have negative disposable income. This is because the Debtors are now separated and supporting two households. Additionally, their mortgage payment increased due to the refinance.[3]

## III.

## LEGAL ANALYSIS

Bankruptcy Code § 1329 governs modification of a confirmed chapter 13 plan. Section 1329(a) provides a plan may be modified at any time after confirmation but before the completion of such payments under the plan, for any of the following reasons: (1) to increase or reduce the amount of payments on claims of a particular class; (2) to extend or reduce the time for such payments; or (3) to alter the amount of the distribution to a creditor whose claim is provided by the plan. Section 1329(b)(1) specifies that Sections 1322(a), 1322(b), 1323(c) and 1325(a) apply to plan modifications. It does not reference the disposable income test in Section 1325(b)(1)(B). 11 U.S.C. § 1329; *see also In re Burgie*, 239 B.R. 406, 408–09 (9th Cir. BAP 1999)(summarizing Section 1329 and recognizing it does not reference Section 1325(b)(1)(B)).

A party has an absolute right to request modification of a plan between its confirmation date and completion of the plan, subject to the limits specified in Section 1329(a) and the bankruptcy court's good judgment and discretion. *In re Powers*, 202 B.R. 618, 622 (9th Cir. BAP 1996); *Burgie*, 239 B.R. at 409. A showing of substantially changed circumstances is not a prerequisite to plan modification. *In re Powers*, 202 B.R. at 622.

---

**1.** The Debtors paid the Trustee a total of $27,704.92.

**2.** Declaration of Boon Sounakhene filed May 4, 2000.

**3.** Declaration of Boon Sounakhene.

In the present case, the requested modification is not timely. Additionally, good judgment and discretion require that the motion be denied.

### A. Timeliness.

 The parties agree the Trustee must file his motion before all the payments under the plan are complete. Once the payments are complete, a motion to modify is time barred. *In re Phelps,* 149 B.R. 534, 538 (Bankr.N.D.Ill.1993); *In re Moss,* 91 B.R. 563, 565 (Bankr.C.D.Cal. 1988). Although there is some disagreement, it has generally been held that a plan is "complete" when the debtor makes all the payments to the trustee. *Phelps,* 149 B.R. at 539; *Moss,* 91 B.R. at 565; *see also Matter of Casper,* 154 B.R. 243, 247 (N.D.Ill.1993)(reversing the bankruptcy court's holding that completion of payments means the trustee's payment to creditors).[4]

In the present case, the Trustee's motion cited no case law and provided no argument concerning the timeliness of his motion. At the hearing, he argued the payments were not complete because he had not yet paid the $188.13 claim of GMAC Mortgage. This claim was disallowed, and at the time he filed his motion, there was a pending application to reallow and pay the claim. [Transcript at p. 5] The Court's review of the file confirms this is true.. However, GMAC's application does not change the plan completion date which was completed when the Debtors paid the Trustee.[5]

### B. The Disposable Income Test.

 The Trustee contends the Debtors must continue their plan payments *for the full 36 months* notwithstanding their lump sum prepayment. He cites only Section 1325(b)(1)(B) to support the modification with no analysis and no case citations. At the hearing, the Trustee clarified his argument. He argued the Debtors should not be permitted to prepay their plan because Section 1325(b)(1)(B) requires the Debtors *to make 36 payments.* If prepayment were permitted, then debtors could confirm a low percentage plan when they could pay off the whole plan and the trustee would not be aware of their ability to pay more until it is too late. [Transcript at p. 4] As a practical matter, this would make Section 1322 and Section 1325 unenforceable and impractical. The Trustee recognized there is (unspecified) case law to the contrary, but asked the Court not to follow it. *Id.* at p. 4.

The Trustee's argument assumes the disposable income test applies to plan modifications notwithstanding its omission from Section 1329. Courts are split as to whether it applies. *See e.g. In re Than,* 215 B.R. 430, 437–38 (9th Cir. BAP 1997)(indicating the disposable income test applies to the initial plan confirmation but declining to decide its application to plan modifications); *In re Forbes,* 215 B.R. 183, 191 (8th Cir. BAP 1997)(holding the disposable income test does not apply to plan modifications) *contra In re Martin,* 232 B.R. 29, 35–36 (Bankr.D.Mass.1999)(holding the disposable income test applies to plan modifications); *In re McCray,* 172 B.R. 154, 158 (Bankr.S.D.Ga.1994)(holding the disposable income test applies to plan modifications in extraordinary circumstances to prevent an abuse of the Bankruptcy Code); *see also* Lundin, Keith M., *Chapter 13 Bankruptcy,* Vol.2, § 6.45 at 6–134–135 (2nd ed.1994)(recognizing that ap-

---

4. The bankruptcy court in *Matter of Casper* was concerned a debtor could receive an inheritance or win the lottery and hand deliver a check to the trustee to prevent an increased distribution to creditors. *Casper,* 153 B.R. 544, 549 (Bankr.N.D.Ill.1993). The Court might consider a later completion date in a similar case. However, the Debtors did not receive a windfall and are financially worse off now than on the confirmation date.

5. The Debtors argue GMAC was paid in full directly through escrow. The Court has no evidence from which to conclude this is true. Regardless, the Trustee has ample funds to pay this claim when and if it is allowed.

plication of the disposable income test to modified plans is largely unsettled).

The Eighth Circuit Bankruptcy Appellate Panel ("BAP") decision in *Forbes* provided an excellent summary of the competing views. *Forbes*, 215 B.R. at 191–92. It indicated the courts which do not apply the disposable income test do so largely based upon its facial omission from Section 1329. *Id.* at 191 (citations omitted). Additionally, it has been observed that application of the disposable income test to plan modifications is redundant. Further, some modified plans could never be confirmed because they would extend beyond five years. *Id.*

Conversely, courts which apply the disposable income test to plan modification motions do so under Section 1329(a). They read the disposable income test into Section 1329(a)'s preface: "[e]xcept as provided in subsection (b)," or look to Section 1329(a)'s blanket statement that the plan must comply "with the provisions of this chapter." *Id.* Further, these courts opine that Congress must have intended to apply the disposable income test to modifications and the omission was oversight. *Id.* After considering the competing views, the Eighth Circuit BAP upheld the statute's plain language and concluded the disposable income test does not apply. *Id.* at 192.

This Court joins those courts that uphold the statute's plain language. Section 1329(b)(1) reincorporates most of the requirements for plan confirmation, but the disposable income test is omitted. The Court declines to read the disposable income test into Section 1329(a) and declines to hold that its omission was oversight. Rather, the better approach is to utilize the analysis underlying the disposable income test in exercising the court's judgment and discretion. *See Than*, 215 B.R. at 436; *Powers*, 202 B.R. at 622 (recognizing the debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion). This approach gives the Court discretion to consider the important components of

the disposable income test, and yet upholds the statute's plain language.

■ However, even if the disposable income test applies to modifications, the Debtors meet the test. First, their revised schedules show they have no disposable income because they have dramatically increased expenses. Second, the Debtors already paid an amount equal to all of their projected disposable income for 36 months. The disposable income test does not preclude debtors from refinancing their home to pay a lump sum equal to the aggregate amount of their disposable income over the life of the plan. *Martin*, 232 B.R. at 37. Nothing in Section 1325(b)(1)(B) prohibits a lump sum payment where no prepayment discount is sought. *Id.* at 37; *accord Phelps*, 149 B.R. at 538 (debtor's prepayment of enough money to pay creditors a 10% dividend completed her plan, and the fact the plan called for 43 monthly payments was irrelevant).

■ Finally, the Trustee is unfairly penalizing the Debtors. They borrowed against the equity in their home to complete the plan instead of defaulting or seeking to reduce their plan payments. The Debtors' equity in their home is a capital asset, not disposable income; they cannot be compelled to apply it toward their plan. *Burgie*, 239 B.R. at 412. The Debtors should not be penalized for using this capital asset to prepay their plan.

## C. *Paragraph 16 of the Plan.*

■ The Debtors surmise that Paragraph 16 of the "mandated" plan might permit the Trustee's modification notwithstanding Section 1329(b). This paragraph purports to redraft Section 1329(b) and apply the disposable income test to plan modifications **regardless of its absence in Section 1329.** The Court is troubled by this provision which purports to override the statutory language of Section 1329. The Court has broad equitable powers, but it cannot use these powers to override

specific Code sections. *In re Reinertson*, 241 B.R. 451, 455 (9th Cir. BAP 1999); *In re Estrada*, 224 B.R. 132, 136 (Bankr. S.D.Cal.1998).

█ The Court is sympathetic to the need of chapter 13 trustees to develop standardized forms to assist in expediting their case load. However, these standardized forms cannot grant rights not authorized by the Bankruptcy Code; nor can they abrogate the ability of debtors to propose their own plans within the permissible limits of the Code. Use of the term "mandated" leads debtors to believe they cannot propose their own plans.

For instance, this "mandated" form leads debtors to believe they must propose a " percentage plan" when debtors need not specify a percentage at all. *Phelps*, 149 B.R. at 536. As Judge Ginsberg explained:

> There is no reason why a debtor could not propose and get confirmed a so-called "pot plan" providing that the debtor will pay all disposable income to the trustee either until those unsecured creditors who file timely proofs of claims are paid in full or for three years, whichever occurs first. It is clear that a debtor who does propose to make disposable income available for three years or more need not specify what percentage creditors will receive so long as creditors are assured that they will be paid at least as much ... as in a Chapter 7 case .... [Citation omitted] Alternatively, the debtor could get confirmed a plan which provided that the debtor will pay disposable income ... for a long enough period of time to pay a certain percent of the claims of unsecured creditors who file timely proofs of claims (subject to the caveat that if the period of time is less than three years, the plan payments must be sufficient to pay allowed unsecured claims in full). [Citation omitted]
>
> Thus, a Chapter 13 debtor must specify in her plan either the length of payments or the percentage .... However-

er, a Chapter 13 debtor need not specify both.

*Id.* at 537 n. 3.

In the present case, this Court does not know whether the Debtors understood they could propose an alternate plan. Regardless, the plan is complete. The Debtors paid the Trustee an amount equal to all their disposable income for 36 months, and the amount is sufficient to pay general unsecured creditors with allowed claims the 12% dividend provided in the plan. As indicated above, this is all Section 1325(b)(1)(B) requires.

## IV.

## CONCLUSION

The Court sustains the Debtors' objection. The motion is barred because it was filed after the Debtors completed their plan. Additionally, the modification is not merited because the Debtors already paid a sum equal to their projected disposable income over 36 months, and the Debtors have no disposable income based upon their current financial circumstances. Finally, Paragraph 16 of the Plan is unenforceable to the extent it purports to create rights not authorized by the Bankruptcy Code.

This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for the Debtors shall lodge an order in accordance with this Memorandum Decision within ten (10) days of its entry.