In the Matter of Dean A. CASPER and Marlene Casper, Debtors.

Dean A. CASPER and Marlene Casper, Appellants,

v.

Jack McCULLOUGH, Trustee, Appellee.

No. 93 C 1730.

United States District Court, N.D. Illinois, E.D.

May 10, 1993.

---

David E. Cohen, Cohen & Krol, Chicago, IL, for appellants.

Elaine Conway Jensen, Sheryl A. Fyock, Office of Jack McCullough, Monette W. Cope, Chicago, IL, for appellee.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the appeal of Dean and Marlene Casper (the "Caspers") from the United States Bankruptcy Court for the Northern District of Illinois. For the following reasons, the decision of the bankruptcy court is reversed.

### FACTS

The Caspers appeal the bankruptcy court's August 7, 1992 order granting the Trustee Jack McCullough's ("Trustee") motion to modify the Caspers' Chapter 13 Plan. The Caspers assert that the Bankruptcy Judge erred in granting the modification because the Trustee's motion was untimely. They further claim that both the holding that the modified plan could run for a term of five years and the finding that the Caspers experienced an unanticipated change in their ability to pay the creditors are clearly erroneous.

On December 19, 1989, the Caspers filed a petition for relief under Chapter 13 of the Bankruptcy Code. The petition listed unsecured debts totalling $29,837.91. Their original plan provided for forty-eight payments of $530. Under this schedule, the Caspers would pay the secured creditors 100% of their claims directly, and the plan would pay priority creditors 100% of their claims and unsecured creditors 10%. In February 1990 the Caspers amended their plan to provide for monthly payments of $550 for sixty months. During the meeting of creditors at this time, the Caspers testified that their priority debt totaled $27,000. Based on this figure, the Trustee calculated the feasibility of the Caspers' plan and determined that the payment schedule proposed in the amended plan would still yield a ten percent payment for the unsecured creditors' claims.

The Caspers' Chapter 13 plan was confirmed on March 19, 1990. The payment to unsecured creditors over a sixty month period at $550 per month would yield a total of $33,000 for payment to the creditors. Among the general unsecured creditors, the Caspers scheduled a $20,000 debt to the Internal Revenue Service ("IRS"). The Illinois Department of Revenue filed a $5,422.89 claim and the IRS filed a claim in the sum of $33,641.74. The Bankruptcy Judge allowed the Illinois Department of Revenue's claim in the sum of $1,992.05 and the IRS's claim in the sum of $12,074.72—both markedly less than scheduled by the Caspers. Additionally, a number of scheduled unsecured creditors failed to file claims by May 14, 1990, the expiration of time for filing claims. Thus, the total to be paid by the Caspers under the confirmed plan that would satisfy the term providing for the payment of ten percent of the claims of the unsecured creditors equals $18,956.13. In February 1992, nearly two years after the bankruptcy court confirmed the plan, the Caspers made a $5,169.61 lump sum payment to the Trustee from funds they obtained from working overtime and from vacation pay. By April 8, 1992, the Caspers tendered to the Trustee sufficient funds to cover ten percent of the claims of the participating allowable creditors. The Trustee, however, failed to distribute these funds to the creditors and instead, two days subsequent to receiving the money, filed the motion to modify that is the subject of this appeal. The Trustee maintained that, with the confirmed plan's monthly payment amount, the Caspers could satisfy eighty percent of the allowed

unsecured claims over the sixty month period originally provided in the plan.

## DISCUSSION

On an appeal from an order of the bankruptcy court, the district court reviews factual findings for clear error and reviews conclusions of law *de novo*. *In re Chappell*, 984 F.2d 775, 779 (7th Cir.1993). The Caspers assert on this appeal that the Trustee's motion to modify was untimely because they had already completed payments under the plan. They further assert that the modification itself is clearly erroneous because it allows for a five year plan as opposed to a three year plan. Last, the Caspers claim that the failure of creditors to file claims and the reduction in the IRS's claim does not constitute an unanticipated change in their ability to pay and thus the Bankruptcy Judge's finding is clearly erroneous.

The Bankruptcy Code provides that, "before the completion of payments under [a Chapter 13] plan," either the debtor, the trustee, or an unsecured creditor can modify a confirmed plan to increase the amount of payments on the claims of a particular class of creditors. 11 U.S.C. § 1329(a)(1). The Caspers maintain that payments under the plan are complete for purposes of 11 U.S.C. § 1329(a) when the debtor pays to the Trustee all payments that are provided for in the plan. The Bankruptcy Court found that payments under a plan are not completed until the Trustee disburses the payments to the creditors; thus the post-confirmation modification of the Caspers' plan is available before the Trustee completes the payments to creditors. Also essential to the bankruptcy court's analysis is that both the number of payments and duration of the plan are essential terms of the Caspers' plan which must also be completed before payments are complete under the plan.

The court disagrees with the bankruptcy court. A debtor's plan must submit all disposable income to the bankruptcy proceedings for at least three years. 11 U.S.C. § 1325(b)(1)(B). The Caspers' confirmed plan provided for a monthly payment of $550 for sixty months. This figure, which totals $33,000, represents the Caspers' available disposable income. Therefore, the Caspers' confirmed plan did provide for the required amount for at least three years. But confirmation of the Chapter 13 plan binds the debtor and each creditor to the terms of the plan. 11 U.S.C. § 1327(a). Although it turned out the Caspers did not require the full amount to satisfy ten percent of the allowed creditors' claims because some creditors failed to file claims, each allowed creditor only expected to receive ten percent of the money due them as bound by the confirmed plan. The Caspers' $23,356.13 payment, after twenty-four months, satisfies the ten percent amount the plan required.

Part of the goal in bankruptcy is to provide finality and an incentive for a debtor to complete payments promptly to secure a discharge. *United States v. Carr*, 142 B.R. 351, 353 (D.Neb.1992). Therefore, when a debtor completes his or her obligation to a class of creditors as provided in a plan, his or her payments are complete. *In re Chancellor*, 78 B.R. 529, 530 (Bankr.N.D.Ill.1987). The bankruptcy courts should look to the substance of the plan and the nature of the debtor's total obligation to the allowed creditors in order to discern when payments under a plan are completed. *Id*. With these principles in mind, this court does not consider the number of payments or the duration of a plan as controlling. *See id; In re Phelps*, 149 B.R. 534, 537 (Bankr.N.D.Ill.1993). Accordingly, contrary to the statement in *In re Powers*, 140 B.R. 476, 481 (Bankr. N.D.Ill.1992), *Chancellor* merely stands for the proposition that payments do not have to continue in the amount and for the period of time provided in a plan if the debtor completes payments early and these payments satisfy the percentage provided for each class of creditors.

Also instructing is the provision dealing with discharging debts, 11 U.S.C. § 1328, which provides that a court *shall* enter an order discharging debts after "payments *by the debtor*" are complete. A debtor's payment to the trustee satisfies

this provision. *See, e.g., West v. Costen,* 826 F.2d 1376, 1378 (4th Cir.1987); *In re Phelps,* 149 B.R. at 538; *In re Hydorn,* 94 B.R. 608, 615–16 (Bankr.W.D.Mo.1988). As a consequence, if a trustee could amend a Chapter 13 plan after the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision would be eviscerated. In other words, when the debtor completes payments under the plan to the Trustee which satisfies his or her percentage obligation to each class of creditors, there is no period between that point and the point at which the bankruptcy court enters an order discharging the debts within which an amendment is possible. The bankruptcy court must discharge the debts. *See West,* 826 F.2d at 1379 (once debtor's payments are completed, bankruptcy court has no choice but to grant discharge). Therefore, the bankruptcy court in *In re Phelps* determined that an interpretation which allows a Trustee to modify after receiving the last payment by the debtor would suggest an anomalous result—that the Trustee could modify a plan to allow payments on a discharged debt. 149 B.R. at 538. Although the Trustee urges the court not to follow *In re Phelps* because the anomalous result postulated in that decision could never occur, that analysis demonstrates that Congress did not intend for the absence of the phrase "by the debtor" in § 1329(a) to denote a distinction between § 1328(a) and § 1329(a) as for when the operative event of "payment" occurs. Moreover, the term "payments" under 11 U.S.C. § 1329(c) has generally been interpreted to mean payments by the debtor to the trustee rather than payments by the trustee to the creditors. *In re Eves,* 67 B.R. 964, 966–67 (Bankr. N.D. Ohio 1986); 5 COLLIER ON BANKRUPTCY ¶ 1329.01[5], 1329–10 (15th ed. 1992); *see also West,* 826 F.2d at 1378.

■■■■■ Accordingly, the "completion of payments" under 11 U.S.C. § 1329(a) occurs when the debtor pays to the Trustee the full amount the plan requires the debtor to pay which satisfies the percentage the debtor proposed to pay to a class of creditors. *Accord In re Phelps,* 149 B.R. at 538–39; *In re Moss,* 91 B.R. 563, 565

(Bankr.C.D.Cal.1988); *In re Chancellor,* 78 B.R. at 530; 5 COLLIER ON BANKRUPTCY ¶ 1329.01[6], 1329–10 to 1329–11 (15th ed.1992). This result is sound because, when a debtor pays funds to a Chapter 13 trustee pursuant to terms of a confirmed plan, the funds are vested in the creditors and the debtor no longer has any interest in the funds. *See In re Halpenny,* 125 B.R. 814, 816 (Bankr.D.Haw.1991).

■■■■ The bankruptcy court and the Trustee are both concerned that the windfall of an early payment is inuring to the benefit of the debtors and not to the creditors. It is true Congress intended that debtors repay creditors to the extent of their capabilities during the Chapter 13 bankruptcy period. *See In re Arnold,* 869 F.2d 240, 242 (4th Cir.1989). However, the only reason the benefit goes to the debtor in this case is because the modification motion came too late. The Trustee should have been aware as early as May 14, 1990, the expiration of the time for filing claims, that more funds were available. Not all of the unsecured creditors filed claims by that time. Moreover, the bankruptcy court reduced the IRS's claim substantially. Therefore, the Trustee had plenty of time to make the motion and avoid the benefit to the Caspers. *See In re Chancellor,* 78 B.R. at 531 (unsecured creditor had sufficient notice of imminent completion of payments by fourteen months; it received larger payments than it would have if it were to be paid in sixty months and only two of the debtors' eleven unsecured creditors filed claims). A postconfirmation modification in the present case was possible early because the Trustee should have been aware of the substantial change in the Caspers' ability to pay a higher percentage to the creditors which was not anticipated at the time of the confirmation of the plan. *See In re Bostwick,* 127 B.R. 419, 420 (Bankr.N.D.Ill.1991) (change in debtor's ability to pay creditors constitutes change in circumstances justifying postconfirmation modification); *In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991) (unanticipated change in circumstances required before court can grant postconfirmation modification). There is no indication in the

248

record that the Caspers acted in bad faith or were aware that early payment was probable at the time the bankruptcy court confirmed their Chapter 13 plan. Indeed, the Caspers not only worked overtime to meet their obligations under the plan expeditiously, they gave up their vacation time and used the money to keep their promises pursuant to the court-confirmed plan.

In sum, the substance of the Caspers' plan consists of its obligation to pay the creditors ten percent of the creditors' claims. All parties are bound by that plan until the plan was completed or was modified before completion. The Caspers discharged their obligation under the plan by paying to the Trustee sufficient funds to cover the ten percent owed on the creditors' claims as provided by the plan. The motion to modify, filed subsequent to the completion of these payments, is untimely.

## CONCLUSION

For all of the forgoing reasons, the court reverses the decision of the bankruptcy court.

IT IS SO ORDERED.