**BAYSHORE NATIONAL BANK OF LAPORTE,**

v.

**Lillie M. SMITH, and Michael Gross, Trustee.**

**No. 9:99–CV–239.**

United States District Court, E.D. Texas, Lufkin Division.

April 12, 2000.

Mynde Shaune Eisen, Houston, TX, for Plaintiff.

Thomas W. Deaton, Flournoy & Deaton, Lufkin, TX, for Defendant.

John Joseph Talton, Tyler, TX, for Trustee.

### MEMORANDUM OPINION

COBB, District Judge.

In this case arising out of a chapter 13 proceeding, Bayshore National Bank of La Porte [BNB] challenges the bankruptcy court's ruling that Ms. Smith, the debtor, is entitled to an order of discharge pursuant to 11 U.S.C. § 1328(a). For the reasons stated herein, the court affirms the ruling of the bankruptcy court.

## I. BACKGROUND

In the bankruptcy context, this court reviews findings of fact for clear error and conclusions of law de novo. *Matter of Walden*, 12 F.3d 445, 448 (5th Cir.1994); *see also In re Chappell*, 984 F.2d 775, 779 (7th Cir.1993). The facts of this case are undisputed and are fully laid out in the bankruptcy court's opinion. *In re Smith*, 237 B.R. 621, 623–24 (Bankr. E.D.Tex.1999). Below are the facts relevant for the issue to be decided today.

On December 12, 1996, the debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. One of the creditors to whom the debtor was indebted was BNB in the amount of $12,857.85. The bankruptcy court, on April 16, 1997, entered an order bifurcating BNB's claim into a secured claim of $9,500.00 and an unsecured claim of $3,357.00.

On June 18, 1997, the debtor obtained confirmation of her Second Amended Chapter 13 Plan [Plan]. The order confirming the plan required the debtor to pay the sum of $14,495.20 in fifty-six (56)

monthly installments to the Trustee. From this sum, BNB's secured claim would be paid over a period of forty-eight (48) months, with a portion of its unsecured claim to be paid in subsequent months of the plan.

Prior to the twenty-seventh (27) monthly installment, the debtor obtained a "gift" from her family in the amount equal to the unpaid balance of her plan, $7,755.55. The debtor did not file any supplemental schedules to document the increase in assets. Additionally, the Trustee did not file any modifications or objections to the lump sum payment. Instead, the Trustee made distribution of the payment to the creditors.

After distributing the money to the creditors, the Trustee filed a "Notice of Plan Completion and Order Setting Discharge." BNB filed an objection to this Notice. BNB claimed that the debtor was not entitled to a discharge because she had failed to submit all of her disposable income to the plan or to make payments for a minimum of thirty-six (36) months. BNB argues that the debtor's lump sum payment should be construed to be a motion by the debtor to approve a post-confirmation modification of the plan pursuant to 11 U.S.C. § 1329(a). This modification would change the duration of the plan from fifty-six (56) months to twenty-seven (27) months and BNB argues it should have been denied since unsecured creditors did not receive what they were anticipating under the plan.

## II. DISCUSSION

■ BNB argues that the bankruptcy court committed four errors in granting discharge to the debtor. They are:

(1) the court committed error by allowing the debtor to pay off her Chapter 13 Plan early utilizing a gift from her parents without requiring her to pay either 100% of the unsecured creditors or make plan payments for thirty-six (36) months;

(2) the court erred by holding that the lump sum payment by the debtor completed her Chapter 13 Plan obligations;

(3) the court erred by holding that the lump sum payment from the gift did not constitute a modification of the debtor's Chapter 13 Plan; and

(4) the court erred in holding that the creditors were paid what they agreed to be paid because the debtor used undisclosed income, i.e. the gift, to pay off the debts earlier than expected.

This court is of the opinion that the bankruptcy court correctly interpreted the Bankruptcy Code in concluding that the debtor should be discharged since the debtor completed all payments under the Plan.

■ Under 11 U.S.C. § 1328(a) a chapter 13 debtor is entitled to a discharge:

[a]s soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for in the plan or disallowed under section 502 of this title . . . .

Thus, the plain language of the statute indicates states when a chapter 13 debtor completes all payments the debtor is entitled to a discharge. Since the language does not state that a lump sum payment cannot be used to complete the payments, this suggests that the debtor should be entitled to a discharge when he does so.

■ Payments under a confirmed plan are complete when the debtor fulfills all obligations to the creditors under that plan. *Matter of Casper*, 154 B.R. 243, 246 (N.D.Ill.1993). Courts should not view the number of payments or the duration of a plan as controlling on the issue of whether a plan has been completed or not. *Id.* In *Casper*, the debtors' confirmed plan provided for sixty (60) monthly payments with unsecured creditors receiving 10% of their claims. *Id.* at 245. Approximately two

**110**

years after the plan was confirmed, the debtors made a lump sum payment to the trustee in an amount equal to the remaining balance of their plan. The district court held that the debtors had completed their plan payments when they used the lump sum payment to pay off their remaining debt. *Id.* at 246.

Here, the debtor completed her plan payments when she paid the balance of her plan from a gift that she obtained from her parents. The debtor discharged her obligation to her creditors as provided for in her confirmed plan and the bankruptcy court was correct in granting her a discharge.

BNB attempts to distinguish *Casper* by arguing that the *Casper* debtors worked overtime to generate extra funds to complete their plan while here the debtor paid off her balance due to the gift from her parents. BNB claims that this debtor now has the means to at least complete the thirty-six (36) month plan, if not the full term of the confirmed plan, because of the gift.

The court views this argument as a distinction without a difference. In this case, BNB has not advanced the argument that the gift to the debtor from her parents was made for the purposes of defrauding the unsecured creditors. As the bankruptcy court noted if such a situation arose, then the analysis would be quite different. *See* 11 U.S.C. § 1328(e); *In re Smith*, 237 B.R. at 627 n. 9; *see also Casper*, 154 B.R. at 247–48 (noting that there was no indication that the debtors acted in bad faith or that they were aware that the early payment was probable at the time the bankruptcy court confirmed the plan). The debtors in *Casper* just as easily could have stretched their payments out over a longer period of time. The *Casper* court had no problems with permitting the debtors to complete the plan by using a lump sum payment and this court sees none.

The reasoning applied by the bankruptcy court in this case encourages debtors to accelerate the completion of plan payments to creditors. In most cases due to the time value of money, creditors would prefer to have the plan payments accelerated. *See In re Easley*, 205 B.R. 334, 336 (Bankr.M.D.Fla.1996) ("they [the creditors] would receive a greater return if the Debtor prepaid the amounts rather than merely completed his payments under the Plan due to the increased time value of money."). This court likewise views this as a worthy goal.

## III. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court granting the debtors a discharge is AFFIRMED.