In re Pedro M. ZAVALA (deceased)
and Sonia M. Zavala, Debtors.

No. 03–32926–RCM.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

April 11, 2007.

Edgar J. Borrego, Miguel Alejandro Flores, Tanzy & Borrego Law Offices, Jerry Tanzy, El Paso, TX, for Debtors.

Lucille Zavala, Office of Stuart C. Cox, El Paso, TX, for Trustee.

### *MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING TRUSTEE'S MOTION TO MODIFY CHAPTER 13 PLAN TO PAY OFF CASE IN FULL*

ROBERT C. McGUIRE, Bankruptcy Judge.

On February 21, 2007, came on for hearing the Motion to Modify Chapter 13 Plan to Pay Off Case in Full filed in the above styled and numbered case by the Chapter 13 Trustee, Stuart Cox. The Trustee appeared pro se, and the Debtor, Sonia Zavala, appeared in person and through counsel. Counsel presented argument and the Debtor testified. At the conclusion of the hearing the court took the matter under advisement. Having now carefully considered that argument and testimony and the pleadings and briefs filed by the parties,

the court now issues this Memorandum Opinion in support of its Order Denying the Trustee's Motion to Modify, entered contemporaneously herewith. The following are the court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 9014 and 7052. Where appropriate, a finding of fact should be construed to be a conclusion of law, and vice versa.

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) ("[c]ore proceedings include, but are not limited to … confirmations of plans").

## THE FACTS

The Debtor through counsel represented that she agreed with the facts as stated by the Trustee in his brief, and the Trustee also stated he agreed with the facts stated by the Debtor in her brief. In particular, there appears to be no dispute as to the following.

The Debtors, husband and wife, filed this Chapter 13 case on November 3, 2003. They listed two sons, ages 16 and 9 when the case was filed, as dependants, and they listed their address on their petition as 10605 Vista Alegra, El Paso, TX 79935 (the "Vista Alegre Property").

On Schedule C, the Debtors claimed a homestead exemption in the Vista Alegre Property as follows:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| *Real Property* Homestead–10605 Vista Alegre El Paso, TX 79935 Principal Balance is $117,000 | Tex. Const. Art. XVI, §§ 50, 51, Tex. Prop.Code §§ 41.001–.002 | $40,448.00 | $157,448.00 |

Neither the Trustee nor any other party in interest objected to that exemption.

The Debtors also listed certain real property located at 10624 Coral Stone Dr., El Paso, TX 79925, with a value of $76,689.00 (the "Rental Property"). On their Schedule A ("Real Property"), they listed "0.00" as the "Amount of the Secured Claim" on the Rental Property and on their Schedule D ("Creditors Holding Secured Claims") they listed GECU as holding one or more liens on the Rental Property but with a claim amount of "0.00"; however, they also indicated under the description of the property on both Schedules that there was a "Principal Balance of $64,456.00," apparently secured by the Rental Property.

The Debtors filed their plan with their petition, and it provided for 60 monthly payments of $425.00 with a proposed dividend on unsecured claims of 58%. The claims secured by the Vista Alegre Property and by the Rental Property were both to be paid outside the plan. The plan was confirmed on February 5, 2004.

On December 14, 2004, the Debtor Pedro Zavala died, apparently after a long illness. Not until October 21, 2006, when the Debtor filed a notice of change of address in the case that added "(deceased)" after her husband's name in the style of the case, was the Trustee provided any notice of the Debtor's death. The deceased Debtor's social security benefits of $730 per month,[1] which had been used

---

**1.** The $730/month figure is taken from the Debtor's brief; however, the Debtors' original Schedule I, never amended, lists $814.00 per month as Social Security income of her husband, along with $436.00 listed as his Social Security income "for children."

to fund the plan, ceased with his death. Schedule I was never amended to show the change in income, however. Sonia Zavala continued to make the plan payments despite this reduction in income.

In December of 2005, Sonia Zavala lost her job which paid her approximately $52,000 per year, and she began receiving unemployment benefits of $1473/month instead. Again, no amendment of Schedule I was ever filed, and the Trustee was not otherwise notified of these events. The Debtor continued to make her plan payments.

In January of 2006, in order to reduce her expenses, the Debtor sold the Vista Alegre Property for $240,000. She received $104,185 from the sale, after payment of the mortgage balance and property taxes and other costs of the sale. The Debtor then moved into the Rental Property, paid off its mortgage in February of 2006, and now claims it as her homestead. No motion to sell the Vista Alegre Property, no amendment of Schedule J to reflect the change to her monthly mortgage expense, and no amendment of her homestead exemption on Schedule C were ever filed. Not until the Debtor filed the notice of change of address on October 21, 2006, were the Trustee and other parties in interest provided any notice of the foregoing changes.

When she moved into the Rental Property, the Debtor paid the balance of $48,729.99 on that mortgage, with some of the proceeds from the Vista Alegre Property. Thus, there was $55,455 left of the Vista Alegre Property sales proceeds after paying off the Rental Property debt. Schedule J was never amended to show the accompanying reduction in her ex-

penses, nor was the Trustee otherwise notified of this event.[2]

Five days before the expiration of the 36th month of her plan, the Debtor tendered a cashiers check to the Trustee in the amount of $10,625.00, which is the remaining balance under the confirmed plan. The payment was received by the Trustee's office on November 1, 2006, and is being held by it.

The remainder of the proceeds from the sale of the Vista Alegre Property was used by the Debtor as follows:

| | |
|---|---|
| balance of lien on 2002 Ford F-150 Ex-Cab pickup truck | $15,561.35 |
| payments of $2000 each to her three children | $ 6,000.00 |
| payment to mother-in-law | $ 1,000.00 |
| balance of loan for heating/air conditioning at Vista Alegre Property | $ 5,000.00 |
| property taxes on the Rental Property | $ 2,856.00 |
| home improvements to Rental Property (carpet, furnace, counter tops, shower stall, dishwasher, closet doors, pool filtration system) | $ 4,657.15 |
| deductible for roof replacement | $ 899.00 |
| deductible for truck accident | $ 500.00 |
| co-payment for son's braces | $ 500.00 |
| attorney's fees for affidavit of heirship | $ 440.00 |
| home insurance | $ 291.00 |
| trip to Chicago for son's graduation | $ 1,500.00 |
| living expenses from January to May, 2006 | the balance of Vista Alegre Property sales proceeds |

On December 6, 2006, the Trustee filed his Motion to Modify, requesting the court to order the Debtor to pay him approximately $13,000 needed to pay a 100% dividend to all unsecured creditors. The Debtor timely filed a response opposing that request.

---

2. While Schedules A and C indicate the mortgage on the Rental Property, and Schedule I indicates $650 per month in income from the Rental Property, Schedule J does not show any corresponding mortgage payment on the Rental Property. The plan appears to provide for $784.00 per month for direct payments on the first and second liens on the Property, both held by GECU.

The Trustee's primary arguments for the modification are that at least $13,000 of the proceeds of the sale of the Vista Alegre Property are (1) non-exempt under Texas law and *In re Zibman*, 268 F.3d 298 (5th Cir.2001), because not invested by the Debtor in a new homestead within six months of the sale, and/or (2) disposable income received by the Debtor within the first three years of the plan, and in either case must therefore be applied to pay creditors' claims. The Debtor responds with the general proposition that lump sum payments of the balance of a plan, even if made within the first 36 months of the plan, are permissible, and with the argument that the proceeds of the sale of the Debtors' exempt homestead are not disposable income. The Debtor also makes the argument that the Trustee's Motion is time-barred, because made after completion of payments under the plan as originally confirmed.

The parties' pleadings and briefs also allude to several other issues, and the facts themselves raise certain issues not expressly addressed by the parties. While the court may recognize those issues, unless necessary to its decision, the court generally declines to address them.

### *LEGAL ANALYSIS*

### *Preliminary Issue:*

### *Is the Motion to Modify Barred Because Not Timely Filed?*

■ The Debtor raises the threshold issue of whether the Trustee may even request a modification of the plan at this point in time, since the Debtor has paid all that the plan required. In particular, § 1329 of the Bankruptcy Code governs post-confirmation modifications of plans and provides that "[a]t any time after confirmation of the plan *but before the completion of payments under such plan,* the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim. . . ." (Emphasis added.) The Debtor argues that the italicized language requires that the Trustee have filed the Motion to Modify *before* the Debtor tendered the $10,625 cashiers check that paid the balance owed under the plan in full.

Although not expressly addressed by the parties, this issue arguably requires the court in this case to first examine and decide whether, under § 1329, it is completion of a debtor's payments to the trustee, or of the trustee's payments to the creditors, that is the outer limit of when a plan may be modified. "Although there is some disagreement, it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee." *In re Sounakhene*, 249 B.R. 801, 804 (Bankr.S.D.Cal.2000), *citing In re Casper*, 154 B.R. 243, 247 (N.D.Ill.1993) (reversing the bankruptcy court's holding that completion of payments means the trustee's payment to creditors), *In re Phelps*, 149 B.R. 534, 539 (Bankr.N.D.Ill.1993) and *In re Moss*, 91 B.R. 563, 565 (Bankr.C.D.Cal. 1988).[3] Based on the analysis in *Casper*,

**3.** The Fifth Circuit Court of Appeals has not expressly ruled on the issue, but in *In re Meza*, 467 F.3d 874 (5th Cir.2006), assumed without any detailed analysis that "completion of payments" means payments by the debtor to the trustee. Strictly speaking, however, the Court's references to payment by the debtor to the trustee were merely *dicta;* there is no indication in the opinion at all whether the trustee's motion to modify was filed or came to hearing before or after the trustee made all the originally proposed payments to creditors. As stated below, *Meza's* only real holding is that a motion to modify is not time-barred if filed before a debtor tenders to the trustee payment in full of the balance owed under the plan. It does not answer whether such a motion would be barred if filed after that tender but before the trustee made all the payments to creditors under the plan, which are the facts of this case.

this court agrees that "completion of payments" should be construed to mean the Debtor's payments to the Trustee, and not the Trustee's payments to her creditors.

The issue then becomes whether the Debtor completed her payments to the Trustee when she delivered her check, in the amount of the balance of her confirmed plan, to him. The Debtor argues that the recent decision of the Fifth Circuit Court of Appeals in *In re Meza,* 467 F.3d 874 (5th Cir.2006), is conclusive on this issue. In that opinion, the Court did expressly state that "if a debtor pays his plan balance and the trustee then seeks to modify the plan under § 1329 to account for newly-acquired funds, modification is not permitted." *Id.* at 878.

This statement is, however, only *dicta* and therefore not binding on this court, because the facts addressed by the Court in *Meza* involved the trustee's filing of a motion to modify before the debtor tendered payment in full of the balance owed under the plan. In *Meza,* only the hearing on the motion to modify, not its filing, occurred after the debtor's tender of the balance owed. These facts are distinguishable from those in the instant case, because here both the filing of the Motion to Modify and the hearing occurred after the Debtor tendered her payment of the balance owed under the confirmed plan.

In addition, this court reads the statement by the Court in *Meza* as a general statement of what the rule should be in most cases. Here, an exception to that rule may be appropriate, because the Trustee had no notice of the Debtor's receipt of the sales proceeds, and thus no reason to file the Motion to Modify, until she sent him the cashiers check to pay off the plan. The Court in *Meza* may have recognized the need for such an exception,

when it noted in a footnote that the debtors in that case:

> did not—but should have—received permission from the bankruptcy court [to refinance their homestead, which refinancing provided the funds to pay off the plan early].... A debtor may sell or lease property of an estate, but only after "notice and a hearing"... Although Debtors' homestead was exempt property and thus not part of the estate under 11 U.S.C. § 541, it is sufficiently analogous—and apparently required by bankruptcy judges in the Northern District of Texas—such that Debtors should have sought court approval before refinancing their home. Had they done so, this would have given Trustee an opportunity, before any refinancing occurred, to object to Debtors' avoiding making payments to their unsecured creditors.

*Id.* at 880 fn. *. Unlike the bankruptcy court in *Meza,* however, the Bankruptcy Court for this Division of the Western District of Texas has no requirement that Chapter 13 debtors obtain court approval to sell fully exempt property, a fact to which the Trustee stipulated at the hearing.[4]

However, there were a number of other events that occurred before the sale of the Vista Alegre Property that were not reported by the Debtor to the court or the Trustee at all, or were not reported in a timely manner by her, which together or even individually might have put him on notice of a possible sale and the possibility of the proceeds of that sale exceeding the amount the Debtor reinvested in a homestead. Those events included Mr. Zavala's death and the elimination of his income, the elimination of the Debtor's mortgage payment on the Vista Alegre Property and

---

4. The court notes, however, that many such motions are nevertheless filed, apparently for the purpose of obtaining a "comfort order" requested by title companies and buyers to show that the sale was permissible.

her mortgage payment on the Rental Property and the resulting decreases in her expenses, and the Debtor's change of address (reported more than eighteen months after the event, and only eleven days before the Trustee received the Debtor's cashier's check).[5]

However, there is no express requirement that a debtor notify a trustee of most of such changes post-confirmation. Lundin, Keith M., *Chapter 13 Bankruptcy*, § 266.1 "To Increase Payments to Creditors," p. 266–16 (3d Ed.2000 & Supp.2006) ("It is difficult for creditors to know when a debtor experiences a significant increase in income or assets that would justify a motion to modify to increase payments. No provision of the Code or Rules requires a Chapter 13 debtor to report the receipt of postpetition assets or increases in income, except the narrow class of inheritances within 180 days of the petition described in § 541(a)(5).") (footnotes omitted). In particular, § 541(a)(5) provides that only limited types of property acquired after the filing of a bankruptcy petition become property of the estate:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>
> (A) by bequest, devise, or inheritance;
>
> (B) as a result of a property settlement agreement with the debtor's

spouse, or of an interlocutory or final divorce decree; or

> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

Federal Rule of Bankruptcy Procedure 1007(h), in turn, requires the post-petition acquisition of only these types of property to be reported by a debtor:

> **Interests acquired or arising after petition.** If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

The Debtor testified that during her bankruptcy case she did receive $50,000 as the proceeds of an insurance policy on her husband's life. However, it was not received within 180 days after she filed her bankruptcy petition and so, even under Rule 1007(h), she was not obligated to

---

**5.** Other events were also not reported, such as the Debtor's loss of her job and substitution of unemployment income. However, these events are not so closely related to the Debt- or's sale of the Vista Alegre Property as to have necessarily put the Trustee on notice of her receipt of the proceeds of that sale.

amend her Schedules. Further, she listed that policy as exempt on her original Schedules. While she testified that she had used $10,000–$15,000 of those proceeds on home improvements on the Vista Alegre Property, and the Trustee at the hearing noted that she had not notified him or the court of her receipt of those proceeds, he also expressly indicated that he did not assert any claim against the Debtor regarding those proceeds.

The Vista Alegre Property sales proceeds were thus the proceeds of the sale of a pre-petition asset, not a newly acquired interest in property and not any of the types of property listed in § 541(a)(5) as property of the estate. The Bankruptcy Code and Rules do not appear to require the Debtor to amend her Schedules to report either the sale of the Vista Alegre Property or her claim of exemption in the Rental Property.

Similarly, there was no provision in the court's local rules and standing orders governing Chapter 13 practice, or in the Debtors' plan itself, requiring the Debtor to report changes in income or expenses or assets disposed of post-confirmation. The only arguably applicable provision is found in paragraph 3 of the order confirming the Debtors' plan, which provided:

> The Debtor(s) have agreed that the Plan of this proceeding shall require that all of the disposable income of the Debtor(s) shall be submitted to the payment of creditors of the estate from the beginning date of the first payment until the Plan may be terminated, and that they will provide such information *as may be requested by the standing Trustee* to exhibit that disposable income.

(Emphasis added.) While this provision would appear to have required the Debtor to provide information to the Trustee at least regarding her retirement of the two mortgage expenses (which would have affected disposable income), the Trustee failed to present any evidence that he ever requested any such information from the Debtor prior to his receipt of the Debtor's cashier's check to pay off the plan.[6]

There were two events, however, that the Debtor clearly had a duty to report to the Trustee, which might have put the Trustee on notice of her receipt of the proceeds of the sale of the Vista Alegre Property, with their potentially time-limited exempt status. One of those events was her change in address from the Vista Alegre Property to the Rental Property. Federal Rule of Bankruptcy Procedure 4002 provides that, among other duties, "the debtor shall ... file a statement of any change of the debtor's address." Based on this requirement in Rule 4002, it would appear that she also had an obligation to report to the Trustee when her husband ceased to live at the Vista Alegre Property, which occurred at his death, if not sooner.

In considering the effect of the Debtor's failure to report these events on her argument that the Trustee is time-barred from requesting a plan modification, the court is mindful of the circumstances surrounding her failure to report in this case. The Debtor testified credibly about her husband's lengthy illness and death and the financial problems they caused, and her

---

**6.** At the hearing, the Trustee appeared to assume that the confirmation order, or some other document or pleading, required the Debtor to update him on her financial situation. Specifically, he asked the Debtor: "Are you aware that you are supposed to, while you are in Chapter 13 when you have a change of financial circumstances, especially a change of jobs, you are supposed to file an amendment advising the Trustee of that?" However, the Trustee never cited any specific source or authority for his assumption and, as discussed above, the court has been unable to find any.

own loss of employment. She was obviously in a very stressful situation. Nevertheless, however, she continued to regularly make her plan payments despite the reduction in her income caused by her husband's passing. *See generally Bayshore National Bank of Laporte v. Smith,* 252 B.R. 107 (E.D.Tex.2000), *aff'd,* 252 F.3d 1357, 2001 WL 422945 (5th Cir.2001) (allowing a lump sum pre-payment of a plan prior to 36 months from funds received by the debtor as a gift, and contrasting that situation with one where the debtor acted in bad faith or the gift to the debtor was made for the purposes of defrauding the unsecured creditors, such as where the debtor was aware that the early payment was probable at the time the bankruptcy court confirmed the plan).

▮▮▮ The court expressly finds that the Debtor's actions in this case in not reporting her husband's and her changes of address do not rise to the level of actual fraud and were not bad faith. However, even if subjectively innocent, her violation of Rule 4002 requiring such reporting may have resulted in the loss of non-exempt funds that could have been used to pay creditors' claims. Did her failure to so report excuse the Trustee's failure to file a motion to modify before he received her check for the amount of the payoff of the plan—i.e., "before the completion of payments under such plan"? *See* 11 U.S.C. § 1329(a). Stated otherwise, is the Debtor estopped to assert what is essentially the affirmative defense of limitations, or is the Trustee's time to file a motion to modify "equitably tolled" because of her failure to report? [7]

Specifically, the doctrine of equitable tolling has been defined by the Supreme Court as follows:

> [T]his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (*quoting Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874)). The Supreme Court went on to note that "[t]his equitable doctrine is read into every federal statute of limitation." *Holmberg, supra,* at 397, 66 S.Ct. 582.

Considering the Debtor's testimony, her failure to report certain events cannot be considered fraudulent. In addition, the court notes that this issue might have been avoided altogether by the Trustee routinely providing every debtor at confirmation with a written request to update financial information upon the occurrence of certain stated events (which practice may in fact occur, but no evidence of that fact was presented at the hearing), or by revision of the form of confirmation order to change the debtor's obligation to update financial information only "upon Trustee's request" to expressly require such updates upon the happening of those stated events. Since the parties presented virtually no evidence on these matters, however, it is impossible to say with certainty what effect they would have had on this case, and whether

---

7. The doctrine of equitable tolling was not raised by the Trustee by name. The court notes that it is not obliged to research and construct arguments when a party is represented by counsel, *see John v. Barron,* 897

F.2d 1387, 1393 (7th Cir.1990), but in this case the doctrine appears to have been argued by the Trustee at least in theory, and seems to be of some relevance to the decision of the court.

they might have shown that the Trustee "remain[ed] in ignorance ... without any fault or want of diligence or care on his part." *Id.* Therefore, the court finds that there was insufficient evidence to invoke the doctrine of equitable tolling in this case.

Accordingly, the court finds and concludes that the Trustee's Motion to Modify is time-barred, and should be denied for that reason. Thus, the Debtor's early pay-off of the existing plan should be permitted and a discharge granted her.

However, in the interests of justice and to complete the record in the event this court is reversed on appeal on the foregoing issue, the court will address certain of the other issues raised by the parties with respect to the merits of the Motion to Modify. The court recognizes, however, that these issues are irrelevant if its ruling on the timeliness of the Trustee's Motion to Modify is upheld.

### *Did the Proceeds Lose their Exempt Status When Not Reinvested Within Six Months of the Sale?*

■ The Debtor argues that, because the proceeds of the sale of her exempt homestead were themselves entirely exempt, the creditors have no right to them and she may not be compelled to use any portion of them to pay creditors. In response to this argument,[8] the Trustee contends, among other things,[9] that the Debtor lost her exemption in the proceeds to the extent that she did not reinvest them

in a new homestead within six months of the sale.

■ Any exemptions claimed by the Debtor under Texas law are determined by the facts and the law as they exist on the date of filing the bankruptcy petition. *In re Zibman,* 268 F.3d 298, 302 (5th Cir.2001), *citing White v. Stump,* 266 U.S. 310, 312, 45 S.Ct. 103, 69 L.Ed. 301 (1924) ("[The Bankruptcy Code] makes the state laws existing when the petition is filed the measure of the right to exemptions."). On November 3, 2003, Texas law provided for a homestead exemption in not only real estate and improvements, but also in the proceeds of their sale, to the following extent:

> § 41.001. Interests in Land Exempt from Seizure
>
> (a) A homestead ... [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.
>
> * * *
>
> (c) The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.

In the relatively recent case of *In re Zibman, supra,* the Fifth Circuit Court of Appeals held that while the debtors, who filed for bankruptcy relief less than six months after the sale of their homestead, were entitled to a Texas homestead exemption in proceeds as of petition date,

---

8. Although for ease of reading the court may have characterized the parties' arguments as starting with the Debtor's contentions, followed by the Trustee's response, the court in its analysis has in fact imposed the burden of proving whether the modified plan is confirmable on its proponent, the Trustee. *See In re Ponteri,* 31 B.R. 859, 863 (Bankr.N.J.1983) (stating, in the context of a debtor's proposed modification, that "[t]he proponent of the Chapter 13 plan has the burden of proof as to its confirmation").

9. The Trustee also argues that the way in which the Debtors listed their homestead on their initial Schedule C resulted in only a portion of the proceeds being exempted, with the balance available to the Trustee to pay creditors in full. However, because the court concludes that the Trustee's contention that the sales proceeds lost their exempt status is correct, it is unnecessary and the court declines to address this alternative argument.

that exemption could not exceed that to which they would have been entitled under state law had no bankruptcy petition been filed, and was subject to all of the limitations integral to the exemption under state law, including the requirement that the sales proceeds must be reinvested in another homestead with six months of sale.

The Trustee argues that under *Zibman*, the proceeds of the sale of the Vista Alegre Property became non-exempt to the extent that they were not reinvested in a Texas homestead within six months. The Debtor counters that *Zibman* does not apply to the facts of this case, because in *Zibman* the debtors had sold their homestead *before* they filed bankruptcy, so that they were claiming only the proceeds as exempt when they filed their bankruptcy petition.

The court finds the distinction cited by the Debtor to be one without difference. Under this court's reading of *Zibman*, when debtors claim a Texas homestead in real estate and improvements that they own as of the date of filing, they are claiming an exemption in the real estate and improvements and their proceeds, if and when received, to the extent they are reinvested in a Texas homestead within six months of their receipt. Whether that sale occurs, and those proceeds are received, pre- or post-petition is immaterial for these purposes.

Accordingly, the court holds that the Vista Alegre Property sales proceeds lost their exempt status to the extent they were not reinvested in the Rental Property as the Debtor's new homestead, within six months of the sale. The Trustee has not contested the Debtor's payoff the mortgage on the Rental Property as a purchase, with the proceeds of the sale of the Vista Alegre Property, of a new Texas homestead within six months of that sale.

The Debtor argues that, at most, *Zibman* and the time-limited Texas exemption in homestead proceeds would give the Trustee or her creditors the right to seize any proceeds that remained after the six-month period, and that there are no such remaining proceeds in this case. The six-month exemption of the Vista Alegre Property sales proceeds from creditors' claims gave the Debtor "the right to hold the money for purchase of another homestead, but not to make purchases of other assets or items or otherwise dispose of the money in a way that would prejudice the interests of [her] creditors in [her] assets." *Hill v. Jones (In re Jones)*, 327 B.R. 297, 302 (Bankr.S.D.Tex.2005). In general, "during '[the] six month window,' if the debtor purchases a new homestead[,] any remaining proceeds from the sale of the first homestead are instantly rendered non-exempt." *Id., quoting In re Davis*, 170 F.3d 475, 483 n. 10 (5th Cir.1999) (in turn *citing In re England*, 975 F.2d 1168 (5th Cir.1992)). Thus, if the Trustee can trace any of the proceeds, even to exempt property (other than a new homestead), he is entitled to that property. The Debtor's argument that the Debtor's dissipation of the proceeds in effect renders the Trustee's request for modification moot, is therefore rejected. To accept such an argument would basically reward a debtor for failing to comply with reporting certain material events and with disposing of estate property without authority.

The court therefore finds that the portion of the proceeds of the sale of the Vista Alegre Property in excess of the amount reinvested in a Texas homestead (which was not disputed to be the amount paid on the Rental Property mortgage, or $48,729.99), became non-exempt in February of 2006, when that mortgage was paid off.[10]

10. Because of this ruling, the court finds it unnecessary to decide whether, if the pro-

654

Any modified plan proposed by the Trustee must meet the requirements of § 1325(a), as made applicable to modifications by § 1329(b)(1). Section 1325(a) includes the requirement that the plan (as modified) be feasible. *See* 11 U.S.C. § 1325(a)(6) ("the court shall confirm a plan if ... the debtor will be able to make all payments under the plan and to comply with the plan....").

### *Is the Proposed Modified Plan Feasible?*

 Section 1329(b), by its incorporation of § 1325(a)(6), requires that any modified plan be feasible. The Debtor argues that she does not have $13,000 to contribute to a modified plan, and therefore in essence argues that the Trustee's proposed plan is not feasible and so cannot be confirmed.

 The Debtor used non-exempt proceeds from the Vista Alegre Property, in an amount greater than needed to pay her unsecured creditors in full, to pay down the lien on the Debtor's 2002 Ford F150 truck. She testified that she paid off the $15,561.35 lien, so the vehicle is apparently free and clear of liens. Although the Trustee did not expressly argue that the truck should be a source of the funds used to make the payment(s) under the modi-

fied plan, the creditors are entitled receive the amount of the non-exempt funds that were used to pay off the lien, up to the value of the vehicle.[11] However, there was no testimony or other evidence regarding the present value of the vehicle. In the absence of such evidence, the court is unable to presume that it has *any* value, let alone sufficient value to fund a plan at 100%.

The Debtor also testified that she had approximately $28,000 in her retirement account related to her former job. She testified that she would have to pay any amount required by the Trustee's proposed modification from that account. She also testified, however, that it would be a hardship for her to have to use the funds that way and that she still has to pay, from that account, federal income taxes on the proceeds from the sale of the Vista Alegre Property. However, the court notes that ordinarily the gain on the sale of a primary residence, up to at least $250,000, is excluded from taxable income. *See* 26 U.S.C. § 121 (2006). More importantly, the Trustee has not argued that the funds in the Debtor's retirement account were non-exempt or otherwise available to him to fund the modified plan. In fact, he expressly stated that he did *not* seek to

ceeds were exempt, they were still disposable income and therefore must be paid to creditors. With that issue would have come a myriad of others—whether the disposable income test applies at all to modifications (*see In re Sunahara*, 326 B.R. 768 (9th Cir. BAP (Cal.) 2005), for a discussion of this issue), whether res judicata principles apply to the finding at confirmation regarding projected disposable income, and how *Meza*, holding that plans may be modified even when there are no substantial or unanticipated circumstances, affects that issue—none of which the court reaches here, under these facts.

11. The amount paid on the truck may be pursued as an unauthorized post-petition transfer under 11 U.S.C. § 549, or it might

also be recovered if it was a transfer in fraud of the Debtor's creditors. *See* Tex. Prop.Code § 42.004 ("If a person uses the property not exempt under this chapter to acquire, obtain an interest in, make improvement to, or pay an indebtedness on personal property which would be exempt under this chapter with the intent to defraud, delay, or hinder an interested person from obtaining that to which the interested person is or may be entitled, the property, interest, or improvement acquired is not exempt from seizure for the satisfaction of liabilities."). This court has already found, however, that the Debtor's intent in making the transfers she did was not fraudulent, and now finds that those transfers were not done with the intent to hinder or delay her creditors, either.

require the Debtor to spend those funds on a modified plan. *See* Transcript of hearing on February 21, 2007, at 10:56:22 a.m. ("I am not saying she has to liquidate her 401K or anything else . . ."). In the absence of any argument, let alone evidence, that the retirement account is available to creditors, the court refuses to order the Debtor to liquidate it to make a lump sum payment to pay unsecured claims in full as required under the proposed modified plan.

There is no other evidence of available property with sufficient value to make a lump sum payment fund the Trustee's proposed modified plan. Alternatively, the Debtor might pay the amount required in monthly payments. The Trustee represented at the hearing that he calculated the Debtor could pay the amount required to pay claims in full, if her plan payments were increased to $590 per month for the remaining months of the originally 60–month plan.[12] However, the Trustee himself qualified this statement as conditioned on the Debtor's ability to make such monthly payments: "If she is able, if she wanted to, she could go at $590 per month and pay this case out at 100%."

While the Debtor testified that she had found new employment in June of 2006 that paid her more than her unemployment income but less than the $52,000 she earned at her former job, there was no further evidence regarding the amount of her current income. The court has already noted that she lost considerable income with the passing of her husband. On the other hand, her expenses appear to have dramatically decreased with the elimination of the Vista Alegre Property mortgage and the payoff of the remaining mortgage on the Rental Property and of the lien on her 2002 F150 Ford pickup.[13]

As mentioned above, the Debtor also testified that she received $50,000 from an insurance policy on her husband's life. While that policy was exempted by her, it may nevertheless be "disposable income" within the meaning of 11 U.S.C. § 1325(b). However, the Trustee at the hearing stated that he was not seeking those proceeds, and the court therefore declines to decide whether they are disposable income.[14] In the absence of any evidence of her current income and of any other property from which monthly payments can be made, the court cannot say with any certainty that a plan requiring her to pay $590 per month would be feasible.

Based on all the foregoing, the court finds and concludes that the Trustee has failed to meet his burden of showing that his proposed modified plan is feasible.

### SUMMARY AND CONCLUSION

For the foregoing reasons, under the circumstances of this case as established by the evidence presented at the hearing, the court holds that the Trustee's motion is time-barred. Alternatively, the court finds and concludes that the modified plan is not feasible and should not for that reason be confirmed.

Therefore, the court holds that the Motion to Modify should be denied, and a

---

12. The Debtor was in the 41st month of her 60–month plan at the time of the hearing.

13. The mortgage payment on the Rental Property alone was $784 per month.

14. It might be argued, however, that those proceeds, even if not themselves disposable income, nevertheless would be available to the Debtor to pay her living expenses which would free up other, indisputably disposable, income to make the increased plan payments. Because this argument was not urged or developed at all by the Trustee, and because the amount of the Debtor's current income is not in evidence, the court refuses to base a finding of feasibility solely on this asset.

separate order to that effect will be entered.